**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lawrence J. MADOCH, Defendant–Appellant.**

**No. 95–2567.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 4, 1996.

Decided March 6, 1997.

Barry Rand Elden, Chief of Appeals, Kaarina Salovaara (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for plaintiff–appellee.

Martin K. Berks (argued), Holstein, Mack & Klein, Chicago, IL, for defendant–appellant.

Before RIPPLE, DIANE P. WOOD, and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Lawrence J. Madoch was a certified public accountant who overstepped the boundaries

of the law in his preparation of tax returns for a number of corporations and individuals. He pleaded guilty to corruptly endeavoring to obstruct the United States from collecting taxes and to collecting $124,476 in bogus tax refunds in violation of 26 U.S.C. § 7212(a), to fraudulently concealing property from his bankruptcy estate in violation of 18 U.S.C. § 152, and to fraudulently concealing a tax refund check from his creditors and the bankruptcy trustee, also in violation of 18 U.S.C. § 152. This appeal concerns the sentence Madoch received for his crimes. He claims that the district court committed a number of errors in its application of the Sentencing Guidelines, which separately and cumulatively led to a higher sentence than he should have received. Because we find that the district court's interpretations of the Guidelines were correct and that its findings of fact were adequately supported by the evidence, we affirm the sentence.

## I

Madoch operated a tax return preparation service for corporations and individuals, using both an office he maintained in Des Plaines, Illinois, and his residence in Elgin, Illinois. From about May 1987 to June 1993, Madoch prepared at least nine false corporate tax returns (Form 1120), corporate applications for tentative returns (Form 1139), and employer's quarterly federal tax returns (Form 941) on behalf of three corporations. None of these corporations had authorized him to prepare the forms in question, nor did they know that Madoch then filed them with the Internal Revenue Service. The forms overstated the amount of the companies' employee's withholding taxes, deductions, wages, and losses by a total of about $636,-406. His efforts produced tax refund checks totaling $124,476. The checks were made out in the names of his unwitting clients and were each mailed to one of Madoch's two addresses. Upon receipt of the checks, he converted them for his personal use (twice with the assistance of his wife, Janice Madoch) and used the proceeds for a variety of personal expenses.

Madoch also prepared and filed at least 88 false individual tax returns over the time period in question. Sixty-one of these claimed refunds based on false W–2 Forms. These returns were in his own name and in the names of some 25 other individuals, including his codefendants Janice Madoch and Joseph W. Milano, Jr. Some of the other individuals were clients who had authorized Madoch to prepare individual tax returns, but others were just people he knew who had not authorized such services, and in some cases the person did not even know him. At least one of the taxpayers had died before he began his scheme, and another was Madoch's minor daughter who had earned no money at all during the years in question. His method of operation was first to create forged Form W–2's, which reflected false salary information. In order to make the scheme work, he exploited his access to confidential information such as the taxpayer's Social Security number. He would then file a fraudulent tax return based on the false W–2 Form, claiming a refund. These 61 returns falsely claimed refunds totaling at least $1,508,668. In turn, the United States issued approximately 35 tax refund checks in the aggregate amount of $675,618 (apparently reviewing the claims enough to disallow them in part). Madoch had 29 of the refund checks mailed to one or another of the five addresses he maintained, which allowed him to pocket at least $588,357 from the refunds.

Madoch employed a different scheme for the other 27 false income tax returns he prepared in the names of 11 more individuals, including co-defendants Larry Buckingham and Ernest Horn. These returns falsified deductions for personal expenses, business expenses, profits and losses, and other deductions. The deductions from these returns totaled $513,054, which caused the tax due to be understated and consequently the refunds due to be overstated. The United States paid approximately 18 refunds based on these tax returns, for a total amount of $129,555. Again, Madoch had at least some of the checks sent to his own addresses; he wound up with about $40,220 from this group of refunds.

The extra money does not appear to have done Madoch much good, because on Janu-

ary 7, 1992, he and his wife filed a bankruptcy petition in the United States Bankruptcy Court for the Northern District of Illinois. In that proceeding, he deliberately concealed from the bankruptcy trustee and his creditors five tax refund checks that he received between January 10, 1992, and July 1992, in the aggregate amount of $132,903. He also concealed the existence of other property belonging to the bankruptcy estate, including jewelry, furs, gemstones, and cash in a bank account, all of which amounted to another $181,092.

At some point in 1992, evidently sensing trouble on the way, Madoch wrote a letter to co-defendant Milano advising him how to behave if the IRS raised any questions about his refunds. In the fourth paragraph of the letter, he had the following suggestion:

> If they happen to call for you, its [sic] probably better not to talk to them—Say your [sic] not living there anymore [sic]—(whoever answers the phone)—or your [sic] out of town or something.

The letter goes on to rehearse the "facts" underlying Milano's 1991, 1990, and 1989 returns, telling Milano who Milano worked for and how much he got paid in each year. This letter played an important role in Madoch's sentencing, as support for an obstruction of justice enhancement.

## II

After the grand jury indicted Madoch on nine counts, he entered a plea of guilty on the three counts summarized above and the remainder were dismissed pursuant to the plea agreement. In the plea agreement, he expressly agreed that "[f]or purposes of applying the Guideline promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 944," that the total tax loss to the United States was $1,868,701.30, and that the total bankruptcy loss was $314,022.03.

Based upon the amount of the false returns and withholdings, and using the 1991 version of the Guidelines,[1] the probation department calculated the base offense level for his tax count as level 18, using the tax table at USSG § 2T4.1. The Presentence Report (PSR) recommended the following enhancements for that offense: (1) a two-level increase for failing to report the source of income exceeding $10,000 resulting from criminal activity, under § 2T1.1(b)(1); (2) a two-level increase for the use of "sophisticated means" to impede discovery of the offense, under § 2T1.1(b)(2); (3) a four-level increase for being an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," under § 3B1.1(a); (4) a two-level increase for abusing a position of private trust as an accountant under § 3B1.3; and (5) a two-level increase for obstructing justice by attempting to suborn perjury, under § 3C1.1. The total recommended adjusted offense level for the tax offense was therefore 30.

For the bankruptcy offenses, the PSR began, under the 1991 version of the Guidelines, at a level 6. It recommended an eight-level increase based on the total value of the property (which exceeded $200,000) pursuant to § 2F1.1(b)(1)(I), a two-level increase because the offense involved more than minimal planning or involved multiple victims, under § 2F1.1(b)(2)(A), and a two-level increase for violating a judicial or administrative order, injunction, decree, or process, under § 2F1.1(b)(3)(B). The total recommended adjusted offense level for the bankruptcy counts was therefore 18.

The PSR recommended against giving Madoch a three-level reduction for acceptance of responsibility under § 3E1.1. Although the two bankruptcy offenses were grouped together under § 3D1.2(d), the tax count was grouped separately because it represented separate victims with separate harms. Since the greater adjusted offense level was 30, the final recommended combined adjusted offense level was 30. Madoch's Criminal History Category was I.

At the sentencing hearing, which was held on June 20, 1995, the government initially argued that Madoch's objections to the PSR should be disregarded because they had not been filed on time. The court decided, how-

---

1. At the June 20, 1995 sentencing hearing, the parties agreed to amend the PSR to apply the 1992 version of the Guidelines. This did not affect the calculation of Madoch's sentence.

ever, to consider them on the merits. Although Madoch conceded that the two-level increase under § 2T1.1(b)(1) for failing to report the source of his income was proper and did not object to the two-level increase for abuse of a position of private trust under § 3B1.3, he challenged the other three enhancements on the tax count, and the valuation of the property on the bankruptcy fraud count. He also argued that he was entitled to a three-level acceptance of responsibility reduction. The government objected to Madoch's points relating to the enhancements on the ground that they contradicted his plea agreement.

The district court rejected Madoch's challenges to the enhancements and the valuation of the property. It concluded that his methods for obtaining the fraudulent refunds amounted to "sophisticated means" to conceal the crime, as the term is used in § 2T1.1(b)(2); that he had acted as a leader of a group of five or more participants (specifically, at least himself, Janice Madoch, Joseph Milano, Larry Buckingham, and Ernest Horn) for purposes of § 3B1.1(a); and that his letter to Milano was (as the plea agreement itself admitted) urging Milano to lie to IRS agents if they questioned him about the returns and the refunds and thus made the § 3C1.1 enhancement proper. With respect to the valuation argument, the court held Madoch to his admission in the plea agreement that the aggregate value was $181,092, which, added to an uncontested $33,626.84 and $99,303.19 of refund checks concealed from the bankruptcy court, produced the total agreed loss of $314,022.03. Finally, although commenting that it was a "close call," the court agreed with Madoch that he was entitled to the three-level reduction of § 3E1.1 for acceptance of responsibility, giving him a final offense level of 27 and, with his criminal history category of I, a sentencing range of 70 to 87 months. The court imposed a sentence of 80 months, to be followed by three years' supervised release.

### III

■ Madoch has brought four issues before this court: his three claims about the enhancements for use of sophisticated means,

for acting as an "organizer or leader," and for obstructing justice, and a variation on his complaint about the value of the aggregate bankruptcy loss. Instead of arguing that the loss was improperly computed, he now argues that he received ineffective assistance of counsel when his trial attorney failed to present any evidence at the sentencing hearing that the aggregate bankruptcy loss did not exceed $200,000, in conjunction with his objection to the eight-level increase in the base bankruptcy offense level pursuant to § 2F1.1(b)(1)(I). Because his argument on each of the enhancement issues rests on the facts found by the district court, we review them only for clear error. *See United States v. Friend,* 104 F.3d 127, 129 (7th Cir.1997) (enhancements for use of "sophisticated means" and for obstructing justice reviewed under the clearly erroneous standard); *United States v. Perez,* 50 F.3d 396, 398 (7th Cir.1995) (adjustment for obstruction of justice reviewed under the clearly erroneous standard); *United States v. Hogan,* 54 F.3d 336, 340 (7th Cir.1995) (enhancement for being leader or organizer reviewed for clear error). Madoch is represented by different counsel on appeal than at the trial level; he may therefore raise his claim of ineffective assistance of trial counsel if he wishes. *McCleese v. United States,* 75 F.3d 1174, 1178 (7th Cir.1996). As we have frequently cautioned, however, our consideration of trial counsel's performance in these circumstances is limited to the trial record. See *Guinan v. United States,* 6 F.3d 468, 472 (7th Cir.1993). Madoch will not have another bite at this apple if he later wants to challenge the effective assistance of trial counsel in a post-conviction proceeding. See *id.* Within these constraints, we necessarily review the ineffectiveness of counsel issue *de novo.*

### A. Use of Sophisticated Means To Impede Discovery of Crime

■ Madoch correctly points out that the term "sophisticated means" in USSG § 2T1.1(b)(2) means "conduct that is more complex and demonstrates greater intricacy or planning than a routine tax-evasion case." USSG § 2T1.1, Application Note 4. The additional penalty is appropriate for deterrence

purposes, because "sophisticated efforts to conceal the offense decrease the likelihood of detection." USSG § 2T1.1 Background. The Guidelines offer as examples the use of offshore bank accounts, or actions to funnel money through corporate shells or fictitious entities. Madoch claims that his scheme was far from sophisticated; indeed, he asserts, it was painfully easy for the government to detect his fraud because he used his own mailing addresses for almost all the refund checks. Even though he managed to keep the game going for nearly six years, he argues that this shows at most that he may have engaged in "more than minimal planning," which would not qualify for the § 2T1.1(b)(2) enhancement. In his view, his actions amounted to nothing more than routine tax evasion and should have been punished as such.

While we do not disagree with the proposition that even more elaborate mechanisms to conceal Madoch's fraudulent activities were possible, this alone does not defeat a finding that he used sophisticated means to escape detection. *See United States v. Hammes*, 3 F.3d 1081, 1083 (7th Cir.1993) (concealment efforts were "sophisticated enough" to warrant enhancement). Madoch has not cited a case to us in which a defendant repeatedly created false W–2 Forms, phony itemized deductions and false employment records, and filed these under the Social Security numbers of everyone from knowing accomplices, to unwitting clients, to the dead and the young. The case he does cite, *United States v. Kaufman*, 800 F.Supp. 648, 655 (N.D.Ind.1992), does not get him off the hook; it supports only the proposition that conduct that is merely repetitive does not necessarily demonstrate "sophisticated means," although it may show "more than minimal planning" under a different Guideline section. Madoch's behavior was more than merely repetitive. The record itself refutes Madoch's claim that his "conduct was so naive and audacious, it actually made the discovery of his offense inevitable." He arranged to have the refund checks mailed to five different addresses. He managed to evade discovery from 1987 until 1993, which is a fairly long run as these things go. The district court could reasonably conclude that

as a CPA, Madoch was able to structure his refund scheme in a way that was unlikely to attract the IRS's attention. We find no error, clear or otherwise, in the district court's conclusion that this represented conduct more complex and intricate than the routine tax evasion scheme, which made the two-level enhancement of USSG § 2T1.1(b)(2) appropriate.

### B. Obstruction of Justice and Suborning Perjury

■ The application notes to USSG § 3C1.1 provide that "threatening, intimidating, or otherwise unlawfully influencing a codefendant ... directly or indirectly, or attempting to do so" and "committing, suborning, or attempting to suborn perjury" are examples of conduct warranting this enhancement. In Madoch's case, the propriety of the enhancement for obstruction of justice, which was based on his effort to suborn perjury from his accomplice Milano, turns on the reasonableness of the district court's interpretation of the handwritten letter from which we have already quoted. One thing is clear. Contrary to Madoch's argument, this letter went beyond a simple suggestion to Milano to remain silent if the IRS happened to contact him. It suggested a demonstrably false answer to the agents: "say your [sic] not living there any more; or your [sic] out of town or something." These facts alone provide ample support for the district court's conclusion that Madoch was instructing Milano to lie to the government agents if they were hot on his trail.

Beyond that, the district court reasonably concluded that the "information" set forth in the balance of the letter about Milano's alleged employment activities during the years 1989 through 1991 was false. Madoch's letter did not furnish detailed or arcane information that a tax client would have needed a CPA to decipher. For the year 1991, for example, it said "You got paid by the state [with the word City written above the word State] [$]30,958 [.] You got paid by Continental Security, Inc. in Maywood, ILL (1701 S. 1st Avenue) $105,860 [.] You also ran your own Security Business." It was well within the bounds of permissible inference to

conclude that legitimate information about one's employer and whether one was running his own business is something Milano would have known on his own. This meant that the letter was rehearsing the cover story the two had chosen to use on the fraudulent forms. In *United States v. Cherif*, 943 F.2d 692, 703 (7th Cir.1991), we upheld an enhancement under this guideline where the defendant wrote a letter to his co-defendant which instructed, "You know you're innocent and there's no way conceivable that you could have known anything about anything." Likewise, we see no error here in the district court's decision to give Madoch the two-level enhancement provided by USSG § 3C1.1.

### C. Organizer or Leader of Five or More Participants

■ Madoch argues here that the imposition of the four-level increase under USSG § 3B1.1(a) was wrong because he was not the *leader* or *organizer* of a criminal activity involving five or more participants (or otherwise extensive). First, he claims that no criminal enterprise or organization existed; instead, he was a solo practitioner committing separate individual criminal acts. An analogy he offers highlights both the nature of this assertion and why it must fail on the present record: if his actions qualified under § 3B1.1(a), he argues, then a CPA in a legitimate tax preparation service who prepares five false individual returns for five separate and unconnected individuals would be subject to the same four-level enhancement. The problem, as the district court noted, is that the facts to which Madoch admitted in the plea agreement show that he was leading other individuals in the overall criminal scheme. His wife, Janice Madoch, helped him on several occasions to convert the illegal refund checks and was the filer for at least one of the false returns; co-defendants Janice Madoch and Joseph Milano helped him to create the 61 false individual tax returns; co-defendant Larry Buckingham cooperated in the preparation of his own fraudulent return, and co-defendant Arthur Horn did the same.

As the district court noted, Madoch was the ringleader for the others: "He was the certified public accountant, he was the one who knew how to prepare the returns; he was the one who in effect directed the activities of the others." These findings amply support the district court's conclusion that Madoch was indeed a leader or organizer, and they are consistent with other decisions in which this court has interpreted that guideline. See *United States v. Briscoe*, 65 F.3d 576, 590 (7th Cir.1995); *Hogan*, 54 F.3d at 340–41. Compare *United States v. Austin*, 54 F.3d 394, 404–05 (7th Cir.1995) (reversing enhancement where other participants did not know they were assisting with fraud); *United States v. Guyton*, 36 F.3d 655, 662–63 (7th Cir.1994) (reversing four-level enhancement for being "leader or organizer" where evidence showed that defendant exercised control over only two other participants).

### D. Ineffectiveness of Trial Counsel at Sentencing

■ As noted before, the district court found that the total loss for the bankruptcy offenses was $314,022, which represented losses of $181,092 for Count Eight and uncontested losses of about $132,930 representing five income tax refund checks that should have gone into the bankruptcy estate. These figures tracked Madoch's admissions in the plea agreement. Notwithstanding that fact, at the sentencing hearing Madoch's counsel objected to the eight-level enhancement in the base bankruptcy offense, pursuant to USSG § 2F1.1(b)(1)(I), on the ground that the concealed property was "nowhere near $181,092." Counsel offered no support for that assertion, and the court went on to accept the amount to which he had stipulated at least twice in the plea agreement. Madoch now argues that his trial counsel's performance in failing to offer evidence of the true value of the property was so deficient that it was constitutionally ineffective, under the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ In order to succeed on this claim, Madoch would have to show that his attorney's performance fell below an objective level of reasonableness and that the error

was so prejudicial that the result of the proceeding was rendered fundamentally unfair or unreliable. *See United States v. Hubbard,* 22 F.3d 1410, 1421 (7th Cir.1994), *cert. denied,* 513 U.S. 1095, 115 S.Ct. 762, 130 L.Ed.2d 660 (1995); *United States v. Alex Janows & Co.,* 2 F.3d 716, 722 (7th Cir.1993). The government offers two dispositive reasons why Madoch fails either way on this claim. First, trial counsel was well within the bounds of reasonable representation when he chose not to pursue a line of objection that was flatly inconsistent with Madoch's plea agreement, under circumstances where Madoch showed no interest in withdrawing the plea agreement itself and starting from scratch. This alone would be enough to dispose of the argument here. But the government also points out, correctly, that it is impossible for Madoch to show prejudice from any alleged error his lawyer may have made on this point. The adjusted offense level for Madoch's tax offense, Count One, was level 27 after the court agreed to the three-level reduction for acceptance of responsibility. Under Madoch's own theory, even if the assets were worth less than $181,-092, his adjusted offense level for the bankruptcy offense was at least level 17. (In other words, adding in the $181,092 meant one more level on the bankruptcy offenses under the table in USSG § 2F1.1(b).) Under the grouping rules of USSG § 3D1.2(d) and 3D1.3(b), the adjusted offense level for the bankruptcy offense—whether it was 17 or 18—had no effect on the combined adjusted level of 30 for the entire case. Thus, Madoch could not possibly have been prejudiced by counsel's decision not to pursue the valuation point.

In sum, Madoch has presented no reason that convinces us that the district court erred in the sentence he received. We therefore AFFIRM the judgment of the district court.