**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lynell R. EWING, Defendant–Appellant.**

No. 97–1933.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 3, 1997.

Decided Nov. 18, 1997.

Peggy A. Lautenschlager, Rita M. Rumbe-low (argued), Office of the U.S. Atty., Madison, WI, for Plaintiff–Appellee.

Jordan Loeb (argued), Madison, WI, for Defendant–Appellant.

Before POSNER, Chief Judge, and MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

In this appeal, Ewing challenges the length of his sentence. He specifically attacks the district court's findings that he attempted to obstruct justice under United States Sentencing Commission, *Guidelines Manual* ("U.S.S.G."), § 3C1.1 (Nov.1995), that he did not accept responsibility under U.S.S.G. § 3E1.1, and that his criminal history category did not adequately reflect the seriousness of his criminal record under U.S.S.G. § 4A1.3. Because the district court properly determined Ewing's sentence, we affirm its judgment.

## I. History

On November 13, 1996, a federal grand jury in the Western District of Wisconsin indicted Lynell Ewing, Debra Couch, and Mary Ellen Johnson (a.k.a. Mary Colleen Trotter). The indictment charged Ewing with two counts of possessing stolen credit cards with intent to defraud in violation of 18 U.S.C. § 1029(a)(3).

The charges stemmed from the defendants' arrest on November 5, 1996. Law enforcement officers found the defendants in possession of stolen credit cards and wallets. A subsequent investigation determined that Ewing, Couch, and Johnson engaged in a crime spree while traveling through Nebraska, Colorado, Minnesota, and Wisconsin. In the months immediately prior to their arrest, the defendants entered office buildings and stole wallets from unattended offices throughout that part of the country. They then used the stolen credit cards and identification to acquire merchandise and cash before moving to the next town. $99,442.08 in charges and withdrawals have been attributed to Ewing.

At their arraignment, all three defendants pled not guilty. The court ordered them detained in the Dane County Jail pending trial and scheduled a trial date for February 18, 1997. Before trial, each of Ewing's co-defendants entered guilty pleas.

On January 22, 1997, Ewing attempted to pass a letter through an unincarcerated third party to his girlfriend and co-defendant, Debra Couch. In the letter, Ewing coached Couch on her testimony. Ewing wrote:

> Now what you must do is write that I had no knowledge of any of that activity until the night we were arrested . . . just make sure your first letter and what you told pretrial services and what you write Judge Crabb all coincide and matches up together, please think back and make sure. We don't .want an obstruction of justice charge.... So you have to be real convincing,. baby, and if everything goes right we got a chance!

On February 13, 1997, Couch's attorney informed the district court that Couch would exercise her Fifth Amendment right against compelled self-incrimination if Ewing called her as a witness.

The next day, Ewing pled guilty to both counts. February 14, 1997 was the last business day before the trial's scheduled start because Monday, February 17, 1997 was a federal holiday. On February 15, Ewing sent Judge Crabb a letter claiming that his criminal involvement was minimal and that he was motivated by a desire to visit his sick father.

The district court sentenced Ewing on April 8, 1997. The applicable guideline for a violation of 18 U.S.C. § 1029 is U.S.S.G. § 2F1.1. The base offense level for this crime is six; the presentence investigation report recommended six additional levels in this instance because the loss was greater than $70,000. *See* U.S.S.G. § 2F1.1(b)(1)(G). In addition, the Guidelines require two more levels as the offense involved more than minimal planning. *Id.* § 2F1.1(b)(2). Based on Ewing's January 22, 1997 letter to Couch, the presentence investigation report recommended a two level increase for obstruction of justice pursuant to U.S.S.G. § 3C1.1. It also suggested .that the court deny Ewing a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Judge Crabb agreed with these recommendations. Specifically, she concluded (1) that Ewing's letter was an attempt "to influence the course of justice" that qualified for a "two point enhancement," *Sentencing Hr'g Tr. at 5, United States v. Ewing,* No. 96 CR 88 (W.D.Wis. Apr. 8, 1997), and (2) that Ewing failed to show acceptance of responsibility by "contest[ing] the government . . . until the last possible moment," by failing to display remorse for his victims until his allocution, and by his "general attitude of disregard of other people's rights or interests or concerns," *Id.* at 11–12.

After calculating an adjusted offense level of 16 and a criminal history category of VI, the court departed upward three levels because Ewing's criminal history category did not adequately represent his criminal record. It then imposed a sentence of 78 months which was the high end of the resulting guideline range. The sentencing court based its sentence on the extensiveness of the scheme, the number of victims, and Ewing's lifestyle. Moreover, it concluded the sentence was necessary to provide individual and general deterrence, to protect the community, and to hold Ewing accountable for his actions.

Ewing appeals his sentence. He claims that the district court erred by finding he obstructed justice and by refusing to recognize his. acceptance of responsibility. Ewing also asserts that the court's upward departure for his criminal history was unreasonable.

## II. Analysis

### A. Standard of Review

In general, we defer to the district court's sentencing determinations. "[F]actual determinations underlying the application of the guidelines" are reviewed for clear error. *United States v. Owolabi,* 69 F.3d 156, 162 (7th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 959, 133 L.Ed.2d 882 (1996) (quoting *United States v. Ritsema,* 31 F.3d 559, 564 (7th Cir.1994)). We only overturn a factual finding made at sentencing if our

review of the record leaves us with a firm conviction that a mistake has been made. *See United States v. Gabel*, 85 F.3d 1217, 1221 (7th Cir.1996). Questions involving the interpretation of the Guidelines are subject to *de novo* review. *See Owolabi*, 69 F.3d at 162.

### B.  Obstruction of Justice

■ Ewing asserts that the district court erred in finding that Ewing attempted to obstruct justice. A sentencing court shall increase the defendant's base offense level by two if he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. Examples of obstruction of justice include "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so," and "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1, comment. (n.3(a), (b)). Section 3C1.1 requires specific intent to obstruct justice. *See United States v. Henderson*, 58 F.3d 1145, 1153 (7th Cir. 1995). The prosecution bears the burden to prove by a preponderance of the evidence that the enhancement is warranted. *See United States v. Hamm*, 13 F.3d 1126, 1129–30 (7th Cir.1994).

Ewing argues that his January 22 letter does not amount to obstruction of justice because he did not threaten or bribe Couch; rather, he was simply reinforcing an idea. The district court concluded that Ewing was "trying to influence the course of justice" by telling Couch, who "is apt to follow his instructions just because of their close connection," "what he wants the witness to testify to." Sentencing Hr'g Tr. at 5. The district court's enhancement is appropriate if it reasonably interpreted Ewing's January 22 letter. *See United States v. Madoch*, 108 F.3d 761, 766 (7th Cir.1997).

In *United States v. Cherif*, the defendant wrote his love interest (who aided in his criminal activity) immediately after he was questioned by the FBI. 943 F.2d 692, 703 (7th Cir.1991). The letter stated, "You know you're innocent and there is no way conceiva-

ble that you could have known anything about anything." *Id.* Cherif's girlfriend later admitted this statement was false. This Court affirmed the district court's conclusion that Cherif was attempting to influence her to lie. *See id.* Among other things, we noted that the girlfriend "would know whether she knew about the scheme; Cherif did not have to tell her. Why else, then write a letter telling [her] she did not know anything, except as a subtle and somewhat clever attempt to tell her, 'Don't spill the beans.'" *Id.*

Similarly, in *Madoch*, the defendant wrote a codefendant advising him how to behave if the IRS questioned him about his returns. *See* 108 F.3d at 764. The letter then proceeded to "rehearse" the "facts" underlying the co-defendant's various tax returns. *See id.* We affirmed the sentencing court's enhancement for obstruction of justice in part because the information in the letter was not "detailed or arcane information that a tax client would have needed a CPA to decipher." *Id.* at 766. It was reasonable to assume that a person should remember who his employer is and whether he is "running his own business." *Id.* at 767. Thus, it was appropriate for the district court to conclude that "the letter was rehearsing the cover story the two had chosen to use on the fraudulent forms." *Id.*

For analogous reasons, the district court reasonably concluded that Ewing attempted to suborn perjury with his January 22 letter. Ewing reminded Couch of events of which she had first hand knowledge. Like the girlfriend's participation in *Cherif* and the co-defendant's employment in *Madoch*, Ewing's statements about his knowledge of any illegal activity is a thinly veiled means of rehearsing their cover story. Ewing's warnings to "be real convincing" and be consistent to avoid an obstruction of justice charge support this supposition. These statements indicate that Ewing is a knowledgeable participant in our criminal justice system who was too sophisticated to suborn perjury by overtly coercing a co-defendant. Also, Ewing's relationship with Couch explains why he did not need to threaten or bribe her. Ewing could have reasonably believed Couch would lie about

his involvement to avoid sending her love interest to jail. Together, these facts provide a reasonable basis for the district court's enhancement for attempted obstruction of justice. The court did not err in enhancing Ewing's sentence.

Ewing also claims the district court erred by failing to establish that his obstruction had an impact or effect on the course of justice. He believes that any contact he made with Couch had no impact because Couch's attorney notified the court that she would assert her Fifth Amendment right if called. However, it is Ewing, not the district court, who misconstrues § 3C1.1. This guideline requires an enhancement of two levels not only when a defendant actually obstructs justice, but also when he attempts to obstruct justice. *See* U.S.S.G. § 3C1.1 comment. (n.3(a), (b)); *see also United States v. Francis*, 39 F.3d 803, 811–12 (7th Cir.1994) (collecting cases). Section 3C1.1 does not require the prosecution to provide evidence of any actual prejudice or impact. *See Owolabi*, 69 F.3d at 163–64. Judge Crabb properly established the elements for obstruction of justice. Ewing merited the two level enhancement.

## C. Acceptance of Responsibility

Ewing also asserts that the district court erred by failing to recognize his acceptance of responsibility. Section 3E1.1 allows for a two level reduction in the base offense level if the defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The guideline further provides a one level reduction if the defendant satisfies the above requirement, his base offense level is 16 or greater, and he assists authorities in the prosecution of his own misconduct by timely informing the government of his involvement in the offense or by timely notifying authorities of his intention to enter a guilty plea. *See id.* § 3E1.1(b). Unlike obstruction of justice *supra*, the defendant has the burden of clearly demonstrating, by a preponderance of the evidence, that he merits a reduction for acceptance of responsibility. *See United States v. Akindele*, 84 F.3d 948, 956 (7th Cir.1996);

*United States v. Morris*, 76 F.3d 171, 175–76 (7th Cir.1996).

Ewing argues that he accepted responsibility even though the court determined that he attempted to obstruct justice. When a sentencing court properly enhances a defendant's offense level under § 3C1.1 for obstructing justice, "he is presumed not to have accepted responsibility." *United States v. Larsen*, 909 F.2d 1047, 1050 (7th Cir.1990). Application Note 4 to § 3E1.1 states that "[c]onduct resulting in an enhancement under § 3C1.1 ... ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1 comment. (n.4). However, there may be "extraordinary cases in which adjustments under both sec.sec. 3C1.1 and 3E1.1 may apply." *Id.*; *see United States v. Lallemand*, 989 F.2d 936, 938 (7th Cir.1993) (explaining that a defendant can obstruct or attempt to obstruct justice at time "t" and later accept responsibility at time "t + 1").

The district court determined that Ewing's case was not an extraordinary one within the meaning of U.S.S.G. § 3C1.1 Application Note 4. *See Lallemand*, 989 F.2d at 938 (finding extraordinary case where defendant fully cooperated with law enforcement officials after arrest); *United States v. Jones*, 983 F.2d 1425, 1434 (7th Cir.1993) (hypothesizing that reduction would be appropriate "where the defendant challenges the constitutionality of the statute underlying the charge"). Ewing's suggestion in his letter that Couch testify that he had no knowledge of the crime until the date of arrest is an attempt to affirmatively shift his own criminal liability elsewhere. The letter is inconsistent with any purported acceptance of responsibility.

Instead of contesting this interpretation of the letter, Ewing contends that he satisfied § 3E1.1 through his guilty plea which was sufficiently timely to spare the government the time and expense of a trial and through his letter to Judge Crabb and allocution which showed true remorse for his action. "A defendant who enters a guilty plea is not entitled to an adjustment ... as a matter of right." U.S.S.G. § 3E1.1, comment. (n.3). The "timeliness of the defendant's conduct in

manifesting the acceptance of responsibility" is a factor in determining whether a defendant qualifies for a § 3E1.1 reduction. Id., comment. (n.1(h)). Ewing pled guilty on the last business day before the trial's scheduled start. The district court rejected Ewing's guilty plea as evidence of his accepting responsibility, noting that Ewing had "contested the government's case ... up until the last possible moment." Sentencing Hr'g Tr. at 11.

We agree. A last minute guilty plea is not usually evidence of a heart full of remorse. Rather, it is "more indicative of a defendant's wish to escape greater punishment than ... a genuine expression of contrition." *Akindele*, 84 F.3d at 957. " '[I]n the absence of evidence of sincere remorse or contrition for one's crimes, a guilty plea entered for the apparent purpose of obtaining a lighter sentence does not entitle a defendant to a reduction for acceptance of responsibility.' " *United States v. Purchess*, 107 F.3d 1261, 1269 (7th Cir.1997) (quoting *United States v. Hammick*, 36 F.3d 594, 600 (7th Cir.1994)).

In his allocution, Ewing tried to convince the court that he engaged in the charged crimes only to earn enough money to enable him to return home to visit his sick father and that he regretted his actions. *See* Sentencing Hr'g Tr. at 9. Deciding whether these reasons are genuine or a pretext requires a credibility determination. At sentencing, the court stated

> You really displayed no remorse for the victims of your crime until just now. You have continued to use your father's illness as an excuse or a reason for the things you've done, none of which I believe.
>
> I don't think that you have really come to terms with the imposition, the distress that you caused the victims with your manipulation of the women involved in this case, and just with your general attitude of disregard of other people's rights or interests or concerns.

Sentencing Hr'g Tr. at 11–12.

The sequence of events surrounding Ewing's guilty plea supports the district court's conclusion. On February 13, Ewing learned that Couch would not perjure herself to support their cover story when her attorney informed the court that Couch would exercise her Fifth Amendment right against compelled self-incrimination if Ewing called her as a witness. The next day Ewing entered his guilty plea. The court only learned about Ewing's sick father and his remorse on the day after his guilty plea. It is reasonable to infer that Ewing's guilty plea and remorse are simply a means of reducing his sentence once he learned his co-defendant would not aid in his deception.

"[A]n appellate court is ill-equipped to assess whether a particular defendant is motivated by genuine acceptance of responsibility or by a self-serving desire to minimize his own punishment. Unlike the district court judge, we do not enjoy a 'front row seat' from which to assess [the defendant's] statements and demeanor." *United States v. Taylor*, 72 F.3d 533, 551–52 (7th Cir.1995) (quoting *United States v. White*, 993 F.2d 147, 151 (7th Cir.1993) (citations omitted)). From its "superior vantage point," *Akindele*, 84 F.3d at 957, the district court concluded that Ewing did not genuinely accept responsibility for his actions. This determination is not without foundation; it therefore was not clearly erroneous.

### D. Inadequacy Of Criminal History Category

Finally, Ewing attacks the district court's enhancement of his criminal history category. First, he claims he did not have notice that an enhancement was possible. It is indisputable that a defendant is entitled to reasonable notice of the grounds for potential upward departure before sentencing. *See Burns v. United States*, 501 U.S. 129, 138, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991) (explaining that "before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, [Fed.R.Crim.P.] 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling"). Of course, a presentence report listing specific factors that may warrant an upward depar-

ture provides adequate notice.[1] *See United States v. Walker*, 98 F.3d 944, 947 (7th Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1012, 136 L.Ed.2d 889 (1997); *United States v. Johnson*, 53 F.3d 831, 833–34 (7th Cir. 1995). In this case, the presentence report, in a section entitled, "Factors That May Warrant Departure," specifically warned Ewing of the possibility of an upward departure under § 4A1.3. Ewing had adequate notice.

■ Second, Ewing believes the enhancement was unreasonable. A "court may consider imposing a sentence departing from the otherwise applicable guideline range" if reliable information indicates that the defendant's criminal history category "does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. The Guidelines also recognize that cases may exist in which even the highest criminal history category, Category VI, is not adequate to reflect the seriousness of the defendant's criminal history. *See id.*

In this case, the sentencing court relied on three factors in departing upward: 1) Ewing's extensive number of criminal history points; 2) the number of prior sentences that the probation officer did not use in computing Ewing's criminal history category; and 3) the fact that Ewing repeatedly engaged in the same course of criminal conduct. Because each factor provides adequate support for the departure, the court did not err in adjusting Ewing's sentence upward.

■ Upward departures are appropriate where the defendant has accumulated criminal history points that "far exceed the number required to place him in the highest criminal history category." *United States v. McKinley*, 84 F.3d 904, 911 (7th Cir.1996) (40 points); *see also United States v. Glas*, 957 F.2d 497 (7th Cir.1992) (39 points); *United States v. Lewis*, 954 F.2d 1386, 1397 (7th Cir.1992) (22 criminal history points). Crimi-

nal history category VI begins with 13 points. *See* U.S.S.G. Ch. 5, Pt. A. The presentencing report relied on 15 earlier convictions to compute Ewing's total of 25 points. Although the nature of the earlier convictions is more important than their sheer number, it is not erroneous for a sentencing court to elect to depart in this situation.

■ Moreover, the court used a reasonable means of calculating its departure. Section 4A1.3 instructs sentencing courts considering an upward departure to "structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." U.S.S.G. § 4A1.3. Categories III, IV, and V each contain three offense levels. *See* U.S.S.G. Ch. 5, Pt. A. The district court added one offense level for every three of Ewing's criminal history points that exceeded 15. As we have stated previously, this methodology is "reasonable and sufficiently linked to the structure of the Guidelines." *McKinley*, 84 F.3d at 911; *see also Glas*, 957 F.2d at 499; *United States v. Scott*, 914 F.2d 959, 965 (7th Cir.1990).

■ Also, it was proper for the sentencing judge to consider prior sentences not used in computing the criminal history category. *See* U.S.S.G. § 4A1.3(a). Reliance on prior convictions is appropriate in at least three situations. A trial judge may depart outside the applicable guideline range if there exists reliable information that a defendant engaged in prior similar adult conduct. See U.S.S.G. §§ 4A1.3(c), (e). "[O]utdated convictions for serious offenses, even though they are offenses dissimilar to the one for which the defendant is being sentenced, are usable for purposes of making an upward departure." *Walker*, 98 F.3d at 947; U.S.S.G. § 4A1.2, comment. (n.8). And, even if all of the prior dissimilar convictions were not sufficiently serious, the court still could have considered them for the "limited pur-

---

1. On appeal, Ewing complains he received no warning of the possibility of a departure for the inadequacy of his criminal history category. Because he did not object in the district court to any alleged lack of notice, we review whether sufficient notice existed for plain error. *See*

*United States v. Otis*, 107 F.3d 487, 489 (7th Cir.1997). The standard of review is not determinative of this question, however, as the record indicates that Ewing knew before sentencing that he faced this possibility.

pose of·establishing the incorrigible character of the defendant's criminal propensities." *Walker*, 98 F.3d at 948; *see also* U.S.S.G. § 4A1.3. Ewing received no criminal history points· for at least four older convictions. These earlier offenses included armed robbery as well as a theft conviction with facts analogous to the present conviction. As each of the earlier convictions satisfies one of these categories, the district court's reliance on them was reasonable.

Finally, the court correctly relied on the fact that Ewing repeatedly engaged in the same course of criminal conduct. Ewing's criminal history is replete with convictions based on stolen credit cards and checks. "[I]f a defendant has been convicted for the same offense more than once, he has demonstrated the need for greater sanctions to deter him from committing the same crime again-greater sanctions than might be required for a defendant who has never been convicted of a similar offense." *United States v. Schmude*, 901 F.2d 555, 559 (7th Cir.1990); *see also United States v. Anderson*, 72 F.3d 563, 566 (7th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1558, 134 L.Ed.2d 659 (1996) (finding that previous convictions for similar crimes constituted "a clear ground for a heavier sentence"), *cert. denied*, —— U.S. ——, 116 S.Ct. 1558, 134 L.Ed.2d 659 (1996). Prior encounters with the criminal justice system have failed to deter Ewing. His record is one of a career criminal whose primary means of support.is stolen credit cards and checks. The lower court determined that additional incarceration was necessary to decrease the possibility of recidivism. *See United States v. Trigg*, 119 F.3d 493, 502–03 (7th Cir.1997). The district court's upward .departure was a sound exercise of judicial discretion.

For the ·above reasons, we AFFIRM the judgment of the district court.