In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2285

United States of America,

Plaintiff-Appellee,

v.

Kenneth L. Utecht,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99-CR-101-S--John C. Shabaz, Chief Judge.

Argued December 8, 2000--Decided January 26, 2001

Before Flaum, Chief Judge, and Ripple and Evans,
Circuit Judges.

Flaum, Chief Judge.  Kenneth L. Utecht claims the
district court erred in denying his motion to
dismiss the indictment or suppress evidence
because the Internal Revenue Service ("IRS") used
its civil summons power after it decided to
recommend that criminal charges be brought
against him. He also contends that he should have
been permitted to conduct discovery on this
issue. In addition, Utecht challenges the
calculation of his sentence, arguing that certain
enhancements should not have been applied and the
amount of tax loss was improperly calculated. For
the reasons stated herein, we affirm.

I.  Background

Utecht is the owner of a corporation that
supplies entertainment equipment, such as pinball
machines and pool tables, to bars in central
Wisconsin. In 1990, Utecht added video poker
games to his stock and began offering these
devices to his customers. Video gambling is
illegal in Wisconsin, so Utecht took a number of
steps to hide the existence of the video gambling
machines and the monies these produced. Most
relevant to this case, Utecht did not report the
revenues from the poker devices on his corporate
or personal federal income tax returns.

The IRS began a civil audit of Utecht and his company in 1994. The audit revealed that Utecht was spending large amounts of cash over his reported income. The IRS investigated and used the "cash method" of proof to determine what the IRS claims are conservative calculations of Utecht's unreported income. The IRS's minimum estimates of Utecht's unreported corporate income are $123,999.21 for the year ending June 30, 1993, and $75,085.46 for the year ending June 30, 1994. His individual unreported income is $64,506.59 for 1992, $137,841.05 for 1993, and $54,913.71 for 1994.

At some point, the IRS's civil audit became a criminal investigation for tax fraud. On October 6, 1999, Utecht was indicted on five counts of violating 26 U.S.C. sec. 7206(1) by making false statements in his personal and business tax returns and two counts of violating 26 U.S.C. sec. 7206(2) by assisting others in filing materially false returns. Utecht filed a not guilty plea on October 26, and then filed a "LaSalle motion" (named after United States v. LaSalle Nat'l Bank, 437 U.S. 298 (1978)) on December 29, seeking to dismiss the indictment or suppress evidence because the IRS allegedly misused its civil summons power. This motion claims that all of the administrative summonses of the IRS seeking records from Utecht were issued after the IRS had made an institutional commitment to criminal prosecution. Utecht did not provide any specific facts to support this assertion in either the motion itself or a supporting brief, but he also filed a discovery motion seeking to require the government to produce all evidence relevant to this defense. On February 1, 2000, the district court, without conducting a hearing, denied Utecht's "LaSalle motion" because he had not made a prima facie showing of entitlement to relief. The court also denied the discovery motion because the government acknowledged that it was under a duty to provide the kind of material Utecht was seeking due to its exculpatory nature, but that the government was unaware of any such evidence.

On February 4, 2000, Utecht entered a plea agreement, under which he plead guilty to the five counts of making false statements in his income tax returns and the government dismissed the remaining two counts. This plea preserved the denial of the "LaSalle motion" for appeal. Utecht claims that he was unable to consult with his counsel before the plea colloquy on that date, which led him to appear confused when the judge first began questioning him. After a recess where Utecht consulted with his attorney, he was able to satisfactorily answer all of the questions posed by the court. In particular, Utecht

answered that no one had forced him to plead guilty and that he was pleading of his own free will because he was in fact guilty of the offenses. The district court scheduled sentencing for April 14.

On March 24, Utecht's appointed counsel filed a motion to withdraw. This motion stated that Utecht claimed that his counsel had threatened him into agreeing to file a guilty plea and was not acting in Utecht's best interests. On April 12, the court conducted a hearing regarding this motion, where Utecht agreed that his counsel should withdraw. The court read various portions of the transcript from the February 4 hearing back to Utecht and reminded Utecht that he had been under oath when he stated at the previous hearing that he had not been forced to plead guilty, that he was in fact guilty of the charged offenses, and that he was satisfied with his current attorney. Utecht then claimed that he had lied at the plea colloquy because he was scared and did not know what to do. The court granted the motion to withdraw, and Utecht retained new counsel.

A sentencing hearing was held on April 26, 2000. The government, using the presumptive rates stated in Note (A) to U.S.S.G. sec. 2T1.1(c)(1), argued that the tax loss from Utecht's failure to report his video gambling income was $120,769.09. Utecht presented the testimony of his accountant in contending that this amount should be decreased by the unclaimed depreciation that would have been taken on the poker machines if the accountant had known about these games. The district court rejected Utecht's argument because of a lack of credible evidence that the depreciations would in fact have been taken. The court also imposed a two level increase for sophisticated concealment, listing a number of ways in which Utecht hid his offenses. Because the court found that Utecht lied at the April 12 hearing, it denied a two level decrease for acceptance of responsibility recommended by the government in the plea agreement. After applying certain other provisions, the court calculated the offense level at 21 and the criminal history category as I, yielding a range of 37 to 46 months. Because the amount of tax loss was near the minimum of the range for the base offense level, the court originally stated that it would sentence Utecht to 37 months, the lowest amount permitted by the Guidelines. The court noted that if it had accepted Utecht's depreciation argument, it would have sentenced him to the top of the range for an offense level of 20, which was 41 months and thus longer than the sentence calculated without taking the deductions into account. Because the statutory maximum for a

single count of violating 26 U.S.C. sec. 7206(1) is three years, the court actually sentenced Utecht to thirty-six months, rejecting the government's suggestion that it remain within the Guidelines by using concurrent sentences.

## II.  Discussion
## A.  "LaSalle Motion"

Utecht argues that the indictment should have been dismissed or evidence suppressed because the IRS abused its civil summons power. In the alternative, he claims that he should have been permitted to conduct discovery into this issue. Utecht principally relies on two cases, LaSalle, 437 U.S. at 316-17 & n.18, which held that under the Internal Revenue Code then in effect the IRS lacked the statutory power to issue civil subpoenas for the sole purpose of investigating criminal activity, and United States v. Peters, 153 F.3d 445 (7th Cir. 1998), which involves when evidence obtained through a consensual search should be suppressed. However, Utecht's precise claim, while closely related to these two lines of authority, appears not to be covered by either of these two cases. Utecht apparently argues that the IRS circumvented his constitutional rights by using civil summonses, and thus the evidence should be suppressed under the exclusionary rule.

In theory, Utecht might have a valid argument for suppression. Subject to certain exceptions and qualifications, materials involuntarily seized from a defendant without probable cause (and a warrant unless an exception to the warrant requirement applies) will be excluded from the defendant's trial. See, e.g., Soldal v. Cook County, Ill., 506 U.S. 56, 66 (1992); United States v. Place, 462 U.S. 696, 701 (1983). However, the IRS need not show probable cause in order to enforce a subpoena demanding that the defendant produce documents for a civil investigation. See United States v. Powell, 379 U.S. 48, 57 (1964); United States v. Kis, 658 F.2d 526, 536 (7th Cir. 1981). Thus, the government's use of civil subpoenas (or other kinds of administrative measures that do not require probable cause) principally to further a criminal investigation could undermine the Fourth Amendment's probable cause requirement. These constitutional concerns were recognized in Abel v. United States, 362 U.S. 217 (1960), the most relevant precedent for Utecht's argument. Abel explicitly contemplates applying the exclusionary rule to evidence obtained through the bad faith use of administrative warrants (which includes the IRS's civil summonses). Id. at 226, 230, 240. Bad faith is present if "the decision to proceed administratively . . . was influenced by, and was carried out for, a purpose of amassing evidence

in the prosecution for crime." Id. at 230; see also Michigan v. Tyler, 436 U.S. 499, 508 (1978) (holding that, while administrative search warrants issued without probable cause can be used to investigate the cause of a fire, search warrants based on probable cause must be used where authorities are seeking evidence that will be used in a criminal investigation). Therefore, if the IRS uses civil subpoenas without establishing the probable cause necessary for criminal cases after having made an institutional commitment to recommend prosecution of the defendant, evidence obtained through these subpoenas possibly could be suppressed at a criminal trial. Factors used to determine when the IRS is conducting a criminal investigation rather than a civil audit are described in Peters, 153 F.3d at 452-56.

As in all requests for dismissal of the indictment or suppression of the evidence, the defendant must first allege facts demonstrating that a hearing on the suppression issue is warranted and then at the hearing must produce evidence that he or she is entitled to the relief sought. Utecht bears the burden of making a prima facie showing before the district court must hold a hearing to investigate whether the IRS abused its civil summons power. See United States v. Rodriguez, 69 F.3d 136, 141 (7th Cir. 1995); United States v. Randle, 966 F.2d 1209, 1212 (7th Cir. 1992). A defendant must present specific, detailed, and material facts in order to carry this burden. See Rodriguez, 69 F.3d at 141; Randle, 966 F.2d at 1212. Utecht fails to satisfy this standard. The only fact on which he relies is that his civil audit has not yet resulted in a tax bill or arrears notice, which he claims suggests that the IRS abandoned its civil tax collection purpose. However, a tax fraud defendant's failure to receive a tax bill tends to suggest that the IRS maintained a proper separation of its civil and criminal functions, undermining Utecht's claim rather than supporting it. Civil matters should be suspended once a criminal investigation begins, see Peters, 153 F.3d at 454, and this would preclude the IRS from sending a tax bill until after the criminal proceeding was completed. Thus, the lack of a civil tax notice is not material to the question of whether the IRS improperly used its civil summons power to gather evidence for a criminal prosecution. Therefore, Utecht has not established a prima facie case and the district court did not err in denying Utecht's motion or refusing to hold a hearing.

Moving on to discovery, what standard a defendant must satisfy to engage in discovery to gather evidence that a potential violation based

on Abel may have occurred appears to be a question of first impression. In the areas of vindictive prosecution and selective prosecution, a defendant must show a colorable basis for his or her claim before discovery against the government is permitted, see United States v. Goulding, 26 F.3d 656, 662 (7th Cir. 1994); United States v. Heidecke, 900 F.2d 1155, 1159 (7th Cir. 1990), and we adopt that requirement for cases where a defendant claims that the IRS misused its civil summons power in a criminal investigation. This standard prevents defendants from unnecessarily imposing enormous administrative costs and delays in tax evasion prosecutions by engaging in extended fishing expeditions to support frivolous challenges. Cf. Heidecke, 900 F.2d at 1158-59 (justifying the colorable basis requirement by discussing the need to guard against "allowing claims of vindictive prosecution to mask abusive discovery tactics by defendants" and to "free[ ] the judicial system of criminal trials with irrelevant massive discovery"). However, this "relatively low burden" on defendants recognizes that, as with vindictive or selective prosecutions, the government holds most of the relevant evidence. Id. at 1158.

Utecht again bases his claim only on his failure to receive a tax bill. As explained above, this lack of action by the IRS is consistent with a proper separation between its civil and criminal functions, and thus is not a colorable basis on which to conclude that the IRS engaged in wrongdoing. Therefore, the district court did not err in refusing to grant discovery against the government.

Moreover, the prosecutor in Utecht's case professed that he was under an obligation to provide the defense with any evidence that might tend to show that the IRS had used its civil summons power improperly. The prosecutor consulted with IRS agents before informing the court and Utecht that he was unaware of any such evidence. Thus, Utecht benefitted from the added protection of a search of the evidence by the government to ensure that Utecht had not been deprived of any of his constitutional rights.

B.  Sentencing Issues

    1.  Acceptance of responsibility.

The district court denied a two level downward adjustment for acceptance of responsibility, even though this was recommended by the prosecution and the pre-sentencing report, because the court believed that Utecht lied at the April 12, 2000 hearing when he disavowed his earlier statements

at the plea colloquy. Utecht does not deny that he lied under oath but challenges the court's decision, claiming that a sworn prevarication is an insufficient basis on which to deny an adjustment for acceptance of responsibility. Whether a defendant has accepted responsibility for his actions is a factual question and thus we review for clear error. See United States v. Martinez, 169 F.3d 1049, 1056 (7th Cir. 1999). In addition, great deference is given to the trial court's determination, since that court is best able to judge the sincerity and contrition of the defendant. See United States v. Stewart, 198 F.3d 984, 987 (7th Cir. 1999); United States v. Mancillas, 183 F.3d 682, 711 (7th Cir. 1999).

The law of this circuit is that lying under oath is a sufficient reason for denying a downward adjustment for acceptance of responsibility. See United States v. Taliaferro, 211 F.3d 412, 415 (7th Cir. 2000) (collecting cases). This statement would normally be enough to conclude discussion on this issue, but Utecht raises a couple of challenges based on case law, though these are unsuccessful. Utecht cites this court's decision in United States v. Eschman, 227 F.3d 886, 891 (7th Cir. 2000), which vacated a defendant's sentence where the defendant expressed remorse at his actions but the district court denied an acceptance of responsibility downward adjustment apparently because the defendant challenged the calculation of his sentence. When Utecht lied at the April 12 hearing, he stated that he had previously lied at the plea colloquy about pleading guilty of his own free will because he was in fact guilty of the charged offenses. This prevarication (that is, the one at the April 12 hearing) was a denial of factual guilt for filing false tax returns because Utecht claimed that he lied when he admitted such guilt. By contrast, Eschman did not involve a claim that the defendant had lied under oath in denying that he had violated the law, as the court here found that Utecht had done. Id. (stating that the defendant "never expressed outright denials of relevant conduct"). Therefore, Eschman does not aid Utecht.

In addition, Utecht relies on the Ninth Circuit's opinion in United States v. Gonzalez, 16 F.3d 985, 991 (9th Cir. 1994), which holds that lying about one's motivation for committing a crime should not play a part in sentencing if the defendant was not trying to avoid criminal liability. However, Gonzalez has been explicitly rejected by the Sixth Circuit in United States v. Greene, 71 F.3d 232, 235 (6th Cir. 1995), weakening its persuasive authority, and is distinguishable from Utecht's circumstances. Gonzalez applies only to lies about a defendant's

motivation; as described above, at the April 12 hearing Utecht prevaricated about filing false tax returns, the offenses with which he was charged rather than his motivation for those crimes. Utecht does not challenge the district court's factual finding that he lied at the April 12 hearing, and thus the district court did not commit clear error in determining that he had not accepted responsibility.

2. Sophisticated concealment.

The district court imposed a two level increase for sophisticated concealment under U.S.S.G. sec. 2T1.1(b)(2). Utecht argues that the district court incorrectly applied a two level enhancement for sophisticated concealment because none of his activities rises above what is necessary to commit garden variety tax fraud. We review the district court's determination that Utecht's conduct made the offense difficult to detect for clear error. See United States v. Madoch, 108 F.3d 761, 765 (7th Cir. 1997); United States v. Hammes, 3 F.3d 1081, 1083 (7th Cir. 1993).

Utecht is correct that the enhancement should not be applied where the concealment is no more intricate or complex than the routine tax evasion case, since all such offenses involve some planning and this is already incorporated into the base offense level. U.S.S.G. sec. 2T1.1, Application Note 4; U.S.S.G. sec. 2T1.1, Background; see Madoch, 108 F.3d at 765–66. However, the mere fact that the scheme might have been more sophisticated or may have had some uncomplicated elements does not preclude the enhancement. See Madoch, 108 F.3d at 766. At least some of the conduct relied on by the district court in imposing the increase is sufficiently above the standard tax fraud case to warrant the enhancement. These activities include: hiding the existence of the video poker machines and proceeds from his accountants; fabricating receipts to account for the proceeds from the video poker machines and including these in the corporate records; generating false 1099s that did not include the payments to bars owners from the revenues of these machines, causing these owners to file false tax returns; and generating false personal property tax returns. Cf. id. (relying in part on defendant's creation of "false W-2 forms, phony itemized deductions and false employment records" in upholding sophisticated concealment enhancement); United States v. Wu, 81 F.3d 72, 73-74 (7th Cir. 1996) (listing falsification of business records, providing fraudulent documents to others, and providing incomplete and misleading information to accountants as some of the defendant's activities justifying a sophisticated concealment

enhancement).

    3.  Tax loss calculation.

    The district court used the presumptive rates in U.S.S.G. sec. 2T1.1(c)(1), Note (A) in calculating the tax loss from Utecht's offenses to be $120,769.09, resulting in a base offense level of 15, U.S.S.G. sec. 2T4.1. If this loss had been just $769.09 less, then Utecht's base offense level would have been 14. Id. At the sentencing hearing, Utecht presented the testimony of his accountant that he would have depreciated the video poker machines had he known of them, resulting in a deduction of more than necessary to drop the tax loss into the amount for the lower base offense level. Utecht argues that the district court should have begun with the presumptive tax rates to calculate tax loss and then decreased this amount by any unclaimed deductions to which he would have been entitled. Utecht relies heavily on dicta in United States v. Martinez-Rios, 143 F.3d 662, 670-71 (2d Cir. 1998), which states that under the 1995 Guidelines legitimate but unclaimed deductions may be used in calculating tax loss.

    The government responds by discussing the language of U.S.S.G. sec. 2T1.1(c)(1), Note (A), which provides that the presumptive rates shall be used "unless a more accurate determination of the tax loss can be made." It asserts that this language means that either the presumptive rates can be used without any adjustment, or the government or taxpayer can forego use of the presumptive rates and perform a more complete audit to determine tax loss which could include unclaimed deductions. However, the government asserts that these two approaches cannot be mixed; that is, if the defendant wishes to rely on the presumptive rates, then no adjustments such as deductions can be applied. It also notes that United States v. Spencer, 178 F.3d 1365, 1368 (10th Cir. 1999) questions the dicta in Martinez-Rios.

    We need not answer the question posed by the parties of whether deductions can be taken from tax loss calculated using the presumptive rates for two reasons. First, the district court indicated that if it had credited Utecht's argument and decreased his offense level by one to 20, it would have sentenced him to the high end of the range for that level, which is 41 months. Because the maximum sentence for a violation of 26 U.S.C. sec. 7206(1) is three years and the district court refused to construct consecutive sentences, the court would have reduced this sentence to 36 months, which is of

course the sentence that Utecht received. Thus, Utecht's sentence would not change even if the depreciation deductions were used in calculating tax loss. Because we conclude that the same sentence would have been imposed irrespective of whether these deductions should have been applied, we decline to resolve this issue. See United States v. Howard, 179 F.3d 539, 545 (7th Cir. 1999); United States v. Dillon, 905 F.2d 1034, 1038 (7th Cir. 1990).

The second, independently sufficient reason for not deciding this legal question is that the district court found as a matter of fact that Utecht had not established that he would have taken the deductions./1 While Utecht's accountant said on direct examination that he would have depreciated the video poker machines during the relevant fiscal years if he had known these existed, on cross-examination the accountant could not remember whether the poker equipment had ever actually been depreciated after the accountant learned of the games. The prosecutor asked additional questions indicating that on the accounting worksheets for years subsequent to when Utecht filed false tax returns the video poker machines had never been depreciated, but the accountant again stated that he could not remember and could not determine from the documents presented to him whether the games were ever depreciated. Presumably on this basis, the district court found that the video poker machines would not have been depreciated during the years of Utecht's tax fraud even if the accountant had known of the games, since whether the machines had in fact been depreciated after the accountant learned of these was unclear. On the record presented to the district court, this finding is not clearly erroneous. Therefore, we need not determine the legal effect of a finding contrary to the district court's actual factual determinations.

III.  Conclusion

Utecht failed to present sufficient evidence to entitle him to dismissal of the indictment, suppression of the evidence, or discovery to investigate a potential violation of his constitutional rights. The district court did not commit error in any of its sentencing calculations. Therefore, Utecht's conviction and sentence are Affirmed.


/1 Indeed, the transcript of the April 26, 2000 sentencing hearing reveals that the district court apparently accepted Utecht's legal argument that unclaimed deductions could be subtracted from tax loss calculated using the presumptive

rates, but that Utecht had failed to present sufficient evidence in this particular case that such deductions would have been claimed. After stating that the offense level was based on a tax loss of $120,769.09, the district court stated:

It may very well be that variations can be addressed by the Court but certainly not in this case. There has been no credible evidence presented to the Court as to the variation which has been suggested by the defendant.

[. . .]

The Court does understand that it should attempt to be more precise perhaps than the guidelines may direct and where the evidence would so demonstrate to the Court by a preponderance of the evidence that the guideline should be changed from that from which it is as suggested to us by the defendant, the Court would do that, but at this point there is nothing to so suggest.

As stated in the body of the text, we express no opinion on the legal issue presented by the parties.