**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jayson FOX, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Roger MILLER, Defendant–Appellant.**

**Nos. 97–2350, 97–2683.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1997.

Decided Feb. 25, 1998.

Daniel H. Sanders (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Calvin R. Malone (argued), Milwaukee, WI, for Defendant–Appellant Fox.

Victor E. Plantinga (argued), Stupar & Schuster, Milwaukee, WI, for Defendant–Appellant Miller.

Before POSNER, Chief Judge, and BAUER and COFFEY, Circuit Judges.

BAUER, Circuit Judge.

Jayson Fox and Roger Miller were charged in a one count indictment with receiving, possessing, transporting, storing, bartering, selling, and disposing of stolen explosives, in violation of 18 U.S.C. §§ 842(h) and 2. Fox pleaded guilty to the indictment. After a sentencing hearing, the district court imposed a sentence of 30 months imprisonment and three years of supervised release. Miller also pleaded guilty to the indictment. After his sentencing hearing, the district court sentenced Miller to a term of 25 months imprisonment and three years of supervised release. Fox and Miller now appeal the sentences imposed by the district court. We affirm.

## Background

Roger Miller began working for Wells Service, Inc. ("Wells") in Crossville, Tennessee in July, 1995. In November of 1995, Miller stole two explosive devices from Wells, and soon thereafter, he lost his job for unrelated reasons. After he was laid off, Miller moved to Wisconsin and brought the explosive devices with him. In February of 1996, Miller showed the explosives to Jayson Fox, and they discussed the possibility of selling the devices. Fox agreed to assist Miller in an attempt to sell the explosives. Miller explained to Fox in sufficient detail how the devices worked so that Fox would be able to

relay this information to a potential buyer. During this discussion, Miller indicated that he wanted $100 for the explosive devices from any sale that Fox was able to arrange.

Fox subsequently informed his roommate Chad Meski of his arrangement with Miller to sell the explosives. At a later date, Meski contacted Special Agent Darrin Kozlowski of the United States Treasury Department, Bureau of Alcohol, Tobacco, and Firearms ("ATF") and informed him about the explosives to which Fox had access. Agent Kozlowski met with Meski to obtain more detailed information about the explosives. After evaluating the information Meski provided to Kozlowski, the Bureau employed Meski as an ATF informant to arrange a meeting between Fox and Special Agent Kozlowski to purchase the explosive devices.

On March 21, 1996, Meski and Agent Kozlowski, working in an undercover capacity, picked up Fox at his place of employment to meet with him and to discuss the possibility of purchasing the explosive devices. Fox described in detail the type of explosive devices to which he had access and their potential uses. Agent Kozlowski indicated that he was interested in purchasing the explosives. Fox gave Kozlowski directions to his apartment, which is also where Roger Miller lived. While Fox went into his apartment, Agent Kozlowski parked his car in the parking lot at the apartment complex and waited there. Fox returned to the parking lot and got into Agent Kozlowski's car with the explosives in his possession. While in the car, Fox explained how the explosives worked and specifically explained how to hook the devices to a car battery.

Discussion of the price of the devices followed, and Agent Kozlowski paid Fox $150 for the explosives. Agent Kozlowski inquired about the possibility of purchasing more devices. Fox told Agent Kozlowski to contact him at a later date to discuss the purchase of additional explosives. Fox did not reveal the supplier's name to Agent Kozlowski but explained that his source could

supply more explosive devices by returning to Tennessee.[1]

Prior to the exchange of the money for the explosives, Agent Kozlowski did not discuss with Fox for what purpose he intended to use the devices. However, after the transfer, Kozlowski asked about the impact the explosives would have on a car, and Fox explained to Kozlowski that they would annihilate a car. Fox then informed Kozlowski that he did not want to know about the intended purpose for the explosives. As Fox got out of the car, he mentioned to Agent Kozlowski that if he killed somebody with one of the devices, the FBI would not be able to identify Kozlowski as the person who detonated the explosives because the FBI would trace the devices back to Tennessee (the original source of the explosives) through a radiation signature within the device.

In an attempt to identify the source of the explosives, Special Agent Kozlowski detonated one of the devices in a controlled setting. However, ATF was unable to identify the source because its detonation was controlled. Thereafter, Agent Kozlowski arranged to purchase additional explosives from Fox. They met at the same apartment complex, and at this meeting, Fox introduced Agent Kozlowski to Roger Miller. Fox and Miller were smoking marijuana during the course of the meeting. At that meeting and two subsequent meetings, Agent Kozlowski and Miller discussed the possibility of obtaining more explosives for purchase.

On November 10, 1996, warrants were issued for Fox and Miller's arrest, and on November 19, an indictment was filed against them. Both Fox and Miller were charged with possessing, transporting, and bartering stolen explosives, in violation of 18 U.S.C. §§ 842(h) and 2. On January 17, 1997, Fox pleaded guilty to the one count indictment. On March 7, 1997, Miller also pleaded guilty to the one count indictment. Presentence investigation reports were prepared, and the district court conducted sentencing hearings.

---

1. Fox never revealed to Special Agent Kozlowski that Miller was the person with whom he had an arrangement to sell the stolen explosives.

Through its investigation, ATF later identified the supplier as Roger Miller.

After presentation of the evidence on May 22, 1997, the district court sentenced Fox to a term of 30 months imprisonment. This sentence reflects a four-level enhancement pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2K1.3(b)(3) because the district court determined that Fox had sufficient knowledge and/or reason to believe that the explosives would be used or possessed in connection with another felony offense. As a result of this knowledge, the district court concluded that the four-level enhancement to Fox's sentence was appropriate.

After a sentencing hearing was held on June 24, 1997, the district court sentenced Miller to 25 months imprisonment, which reflects a base offense level of sixteen because the district court classified him as a "prohibited person" as defined by U.S.S.G. § 2K1.3(a)(3) and also includes the same four-level enhancement as applied to Fox pursuant to U.S.S.G. § 2K1.3(b)(3) for his knowledge of the subsequent use of the explosives. Fox and Miller filed timely notices of appeal.[2]

Fox and Miller appeal their sentences, arguing that the district court erred in its decision to apply the four-level enhancement to their sentences pursuant to U.S.S.G. § 2K1.3(b)(3) for their knowledge and/or reasonable belief that the stolen explosives would be used or possessed in connection with another felony offense. They attack the court's determinations as unsupported by the evidence.

Miller further challenges his sentence as fundamentally unconstitutional and in violation of both the Wisconsin and United States Constitutions because the district court characterized him as a prohibited person as defined by U.S.S.G. § 2K1.3(a)(3). He contends that the application of the enhanced base offense level is unconstitutional and violates his right to be free from cruel and unusual punishment because the guideline punishes him for his status of using or being addicted to a controlled substance. For the reasons discussed below, we affirm the sentences imposed by the district court.

**2.** Pursuant to an order we issued on July 14, 1997, the appeals of Fox and Miller have been

## Analysis

 In reviewing a district court's sentencing determinations, we review the findings of fact underlying the application of the sentencing guidelines for clear error. *United States v. Ewing,* 129 F.3d 430, 433 (7th Cir.1997) (citations omitted). The district court's conclusion that the defendants had knowledge and/or reason to believe that the stolen explosives would be used or possessed in connection with another felony offense is a factual determination and, therefore, is reviewed for clear error. Under this standard of review, we accord great deference to the district court's findings and reverse its judgment only if a review of the record demonstrates a "definite and firm conviction that a mistake has been committed." *United States v. Friend,* 104 F.3d 127, 129 (7th Cir.1997); *United States v. Hickok,* 77 F.3d 992, 1007 (7th Cir.1996) (quoting *Andersen v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1984)).

Fox and Miller argue that the district court erred in its application of the four-level sentence enhancement to each of their sentences as required by U.S.S.G. § 2K1.3(b)(3). At the defendants' sentencing hearings, the district court adopted the factual findings and guideline application discussed in each of the presentence reports and applied a four-level enhancement to both Fox and Miller's base offense levels pursuant to U.S.S.G. § 2K1.3(b)(3), which provides:

> If the defendant used or possessed any explosive material in connection with another felony offense; or possessed or transferred any explosive material with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels.

U.S.S.G. § 2K1.3(b)(3). The defendants contend that the application of the sentence enhancement was improper because they did not have sufficient knowledge and/or reason to believe that the stolen explosives would be used or possessed in connection with another felony offense.

consolidated for purposes of briefing and disposition.

Fox argues that his discussions with Agent Kozlowski did not impart sufficient knowledge or provide him with reason to believe that the explosives were going to be used or possessed in connection with another felony offense. Miller contends that because he was not present for the initial conversations between Fox and Agent Kozlowski and Fox did not relay or discuss those conversations with him, the district court incorrectly concluded that he had the requisite knowledge and/or reasonable belief that the explosive devices would be used or possessed in connection with another felony offense. The government responds, and we agree, that the district court did not err in its application of the four-level enhancement to either Fox or Miller's sentence pursuant to U.S.S.G. § 2K1.3(b)(3).

■ First, we consider Fox's sentence. The district court provided its reasoning at Fox's sentencing hearing for the imposition of the four-level sentence enhancement. In observing the totality of the evidence and listening to the testimony, the sentencing judge concluded that there was sufficient evidence to indicate to an ordinary person that Fox knew or had reason to believe that the subsequent use or possession of the explosives was going to be in connection with another felony offense.

In support of its finding, the district court focused on: (1) Fox's extensive discussions with Agent Kozlowski about how to hook up the explosives to a car; (2) his explanation that the FBI would not be able to trace use of the explosives back to Kozlowski; and (3) his statement when he exited the car, which was "I don't even want to know how you're going to use this." The court concluded that Fox would not have made any comment about his knowledge if he did not have reason to believe that the purchaser was going to use the explosives for an illegal purpose. In our review, we give due deference to the district court's application of the guidelines and, accordingly, conclude that the district court did not err in applying the four-level enhancement to Fox's sentence pursuant to U.S.S.G. § 2K1.3(b)(3).

■ Second, we review Miller's sentence. The district court further concluded in a subsequent sentencing hearing that the four-level enhancement to Miller's sentence also was appropriate. After viewing the witness and hearing the testimony, the district court judge commented on the believability, or lack thereof, of Miller's testimony and rejected his claim that he had no knowledge that the explosives would be used or possessed in connection with another felony offense. We will not review the district court's decision to give certain testimony less weight than other evidence. It is the proper role of the district court to make credibility determinations, and those findings must receive special deference. *Anderson*, 470 U.S. at 573–75, 105 S.Ct. at 1511–12.

In support of his findings, the sentencing judge pointed to inconsistencies in Miller's testimony. Although Miller was not present for the initial conversation between Fox and Special Agent Kozlowski when Fox explained how to detonate the explosives, it is clear from the record that Miller originally provided this information to Fox and explained to him in detail how to attach the explosives to a car battery. When Miller eventually met Special Agent Kozlowski, Kozlowski expressed his satisfaction with his first purchase and inquired about additional purchases of explosives. Miller indicated that he could return to Tennessee and steal more explosives.

In assessing Miller's participation, the district court concluded that the manner in which these transactions occurred indicated that it was reasonably foreseeable that the stolen explosives would be used or possessed for an illegal purpose. In our opinion, the district court's findings were not clearly erroneous, and we agree with its determination that Miller in fact did have sufficient knowledge of the subsequent use of the explosives. Accordingly, the application of the four-level enhancement to Miller's sentence pursuant to U.S.S.G. § 2K1.3(b)(3) also is appropriate.

■ Next, we address Miller's argument that the application of U.S.S.G. § 2K1.3(a)(3) violates state and federal constitutional provisions which guarantee the right to be free from cruel and unusual punishment. Questions involving interpretation of the sentenc-

ing guidelines are reviewed *de novo*. *Ewing*, 129 F.3d at 433; *United States v. Owolabi*, 69 F.3d 156, 162 (7th Cir.1995). The sentencing guidelines establish the applicable base offense levels for the unlawful possession of explosive materials. Section 2K1.3 of the guidelines provides:

> Unlawful Receipt, Possession, or Transportation of Explosive Materials; Prohibited Transactions Involving Explosive Materials
>
> (a) Base Offense Level (Apply the Greatest):
>
> . . . .
>
> (3) **16,** if the defendant is a prohibited person; or knowingly distributed explosive materials to a prohibited person; or
>
> (4) **12,** otherwise.

U.S.S.G. § 2K1.3(a). The guidelines define a prohibited person as anyone who "is an unlawful user of, or is addicted to, any controlled substance." *See* U.S.S.G. § 2K1.3(a)(3), Application Note 3(iii).

Miller contends that the application of the sentencing guidelines punishes his status of being addicted to a controlled substance. He focuses on his drug abuse and addiction as the reasons for his punishment and claims that the penalty enhancement within the applicable base offense level pursuant to U.S.S.G. § 2K1.3(a)(3) seeks to punish him for his use of and/or addiction to marijuana. However, this focus is misplaced.

After reviewing the presentence report and listening to the testimony at Miller's sentencing hearing, the district court determined that Miller is a "prohibited person" as defined by the sentencing guidelines based on his unlawful use of a controlled substance. Miller is not being prosecuted for his status of using or being addicted to marijuana; rather, he is being prosecuted for the federal criminal offense of possessing, transporting, and selling stolen explosive materials. *See* 18 U.S.C. § 842(h). The penalty enhancement within the applicable base offense level pursuant to U.S.S.G. § 2K1.3(a)(3) simply recognizes that a person who possesses, transports, or barters stolen explosives while using or under the influence of drugs sub-stantially intensifies a potentially dangerous situation, which warrants the application of a greater base offense level. Accordingly, the district court properly interpreted the sentencing guidelines and applied the correct base offense level for Miller's unlawful use of marijuana in connection with his possession and sale of the explosives.

In addition, Miller contends that his sentence violates the state and federal constitutional guarantees to be free from cruel and unusual punishment. The district court summarily rejected Miller's argument, and we too agree that the penalty enhancement within the applicable base offense level pursuant to U.S.S.G. § 2K1.3(a)(3) is not in violation of either his state or federal constitutional rights and, more specifically, does not constitute cruel and unusual punishment. The fact that a criminal's sentence includes a four-level enhancement within the applicable base offense level for use of or addiction to a controlled substance during the commission of another crime does not constitute cruel and unusual punishment. Moreover, the government prosecuted Miller for a federal criminal offense, and not a state crime, and the district court properly used the United States Sentencing Guidelines to determine his appropriate sentence. We conclude that the district court applied the correct base offense level for Miller's classification as a prohibited person pursuant to U.S.S.G. § 2K1.3(a)(3).

## Conclusion

For the foregoing reasons, we AFFIRM the sentences imposed by the district court.