# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2696

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| James G. Allee, | * | |
| [Legal Name: James G. Allee, Jr.] | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 13, 2001

Filed: March 7, 2002

_____

Before LOKEN, HEANEY and RILEY, Circuit Judges.

_____

HEANEY, Circuit Judge.

James G. Allee appeals the district court's[1] imposition of a 646-month sentence for conspiracy to commit bank robbery, bank robbery, carjacking with the intent to cause death or serious bodily harm, being a felon in possession of a firearm, and two counts of using a firearm in relation to a crime of violence. He argues that the district

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

court erred by imposing a 25-year consecutive sentence for his second violation of 18 U.S.C. § 924(c), and by denying an offense level reduction for acceptance of responsibility. We find that the district court properly determined Allee's use of a firearm during the carjacking mandated the application of § 924(c)'s 25-year enhancement. We also find that Allee's escape attempt precluded him from receiving an offense level reduction for acceptance of responsibility. Therefore, we affirm.

## I.    BACKGROUND

On March 14, 2000, the Westgate Bank in Lincoln, Nebraska was robbed by two men. Both men branded firearms and wore ski masks. One of the men told everyone to lie on the ground, while the other jumped over a teller station and began removing money from cash drawers and a nearby vault. The men left the bank with approximately $37,787.00, and fled in a Jeep Cherokee that had been reported stolen several minutes before the robbery. The Jeep Cherokee was abandoned a short time afterward.

Later that day, a sheriff's deputy observed a Mazda Navajo traveling towards Omaha, Nebraska on Interstate 80. The deputy noticed that a woman was driving, and one or two men were lying down in the back. As the deputy followed, one of the men kept raising his head to peer back towards the deputy.[2] The deputy activated his lights and stopped the vehicle; however, as he prepared to approach the vehicle on foot, the driver suddenly drove away and a high speed chase ensued. Eventually, the vehicle veered off the interstate and across a field. Officers were unable to continue the pursuit because of the terrain.

Shortly thereafter, law enforcement officials received a 911 call from an area near the location where the Mazda Navajo left the interstate. The caller reported that

---

[2]The deputy was later able to confirm that this man was Allee.

there had been a break-in at a house in a rural area and that the owners of the house, Leslie and Retha Debrie, had been shot. The Debries later testified that they had been at home around 5:00 p.m. when they heard a vehicle enter the driveway. Two men exited the vehicle and forced their way into the house. The men ordered the Debries to get on the floor, ripped the phone lines out of the walls, and demanded the keys to the Debrie's Ford pickup truck. The men then ordered the Debries to accompany them out of the house. As they left, Leslie Debrie pushed his wife back inside and attempted to close and lock the door. One of the men responded by shooting through the door, hitting both Leslie and Retha Debrie several times. The men, along with their female accomplice, then drove off in the Debrie's Ford pickup, leaving behind the Mazda Navajo. Inside the Mazda Navajo were items belonging to the owner of the Jeep Cherokee that had been used in connection with the robbery of the Westgate Bank.

Law enforcement officials were eventually able to identify Allee and his brother Justin as the bank robbers. Their female accomplice was identified as Sue Bryant. After these individuals were arrested, Bryant entered into a plea agreement with the government. She also signed a cooperation agreement and agreed to testify that Allee and his brother were the men with her in the Mazda Navajo, and were at the Debrie residence at the time of the shooting.

After he was indicted in March, 2000, Allee was ordered detained pending trial. While in custody, he attempted to escape from the Douglas County Correctional Center in Omaha, Nebraska by using an object to chip through a cell-block wall. On March 6, 2001, he pled guilty to charges of conspiracy to commit bank robbery, bank robbery, using a weapon during the commission of a bank robbery, carjacking with the intent to cause death or serious bodily harm, using a weapon during the commission of a carjacking, and being a felon in possession of a firearm. Six days later, he briefly escaped from the Pottawattamie County Jail in Council Bluffs, Iowa by climbing through a ceiling vent and descending from the prison roof using a rope

fashioned from bed sheets. He then stole a pick-up truck from a nearby residence and used it to travel to Nebraska. He was apprehended at a truck stop several hours later.

Allee was sentenced by the district court on June 11, 2001. At the hearing, he argued that he should receive credit for acceptance of responsibility, and that he should not receive a 25-year mandatory consecutive sentence for his second conviction under § 924(c)(1). The district court rejected both arguments and sentenced Allee to a total of 646 months in prison. This appeal followed.

II.    DISCUSSION

We first consider Allee's claim that the district court erred when it imposed a 25-year consecutive sentence for his second conviction for use of a firearm in relation to a crime of violence. The district court's interpretation of an enhanced penalty provision is reviewed de novo. See United States v. Street, 257 F.3d 869, 870 (8th Cir. 2001).

Allee does not quarrel with the government's ability to secure multiple § 924(c) convictions based on a single indictment. See Deal v. United States, 508 U.S. 129, 132-34 (1993) (holding that a second conviction under § 924(c)(1) may result from the same indictment under which the first § 924(c)(1) conviction was obtained, thereby giving rise to an enhanced term of imprisonment); United States v. Ortiz-Martinez, 1 F.3d 662, 671 (8th Cir. 1993) (noting that a defendant may be convicted of more than one violation of § 924(c) based upon the same predicate offense). Instead, he contends that his use of a firearm during the robbery of the Westgate Bank and his subsequent shooting of Leslie and Retha Debrie were part of a single criminal enterprise, and therefore not separate convictions under § 924(c)(1)(C). As presently codified, § 924(c)(1) provides that:

(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime–

(i)     be sentenced to a term of imprisonment of not less than 5 years;

(ii)    if the firearm is brandished, be sentenced to a term of imprisonment of not   less than 7 years; and

(iii)   if the firearm is discharged, be sentenced to a term of imprisonment of not   less than 10 years.

. . . .

(C) In the case of a second or subsequent conviction under this subsection, the person shall–

(i)     be sentenced to a term of imprisonment of not less than 25 years

. . . .

Title 18 U.S.C. § 924(c)(1) (Supp. IV 1998).

In order to impose a 25-year consecutive sentence under § 924(c)(1)(C), a defendant's "second or subsequent conviction" must arise from criminal activity that is separate and distinct from the behavior that results in the first § 924(c) conviction. See United States v. Freisinger, 937 F.2d 383, 391 (8th Cir. 1991) (refusing to apply 924(c)(1)(C)'s penalty enhancement where defendant was carrying more than one firearm during a single drug trafficking offense); United States v. Lucas, 932 F.2d 1210, 1222-23 (8th Cir. 1991) (noting that consecutive sentences were appropriate under § 924(c) where one set of firearms contained in defendant's residence were used for protection of family members, drugs, and drug money, while a machine gun was used to protect a crack lab located in the basement); Ortiz-Martinez, 1 F.3d at 672 (holding that consecutive sentences were appropriate under § 924(c)(1)(C) where weapons were discovered at different residences at different times). Here, the district court correctly determined that Allee's multiple § 924(c) convictions, arising from the

bank robbery and the carjacking, were the result of separate criminal offenses. This finding necessitated the imposition a 25-year consecutive sentence.

Although these two criminal episodes are factually related, this relationship does not preclude the imposition of the sentence provided for by § 924(c)(1)(C). Allee first used a firearm to aid in the commission of a robbery, and later to facilitate a carjacking. These predicate offenses are distinct. Also, Allee's criminal acts occurred at different times, in different locations, and involved different victims. Allee's second § 924(c) conviction was based upon criminal behavior that was separate from his participation in the bank robbery. The district court did not err when it used this conviction to impose a 25-year consecutive sentence. Cf. United States v. Casiano, 113 F.3d 420, 426 (3rd Cir. 1997) (holding that § 924(c)'s sentence enhancement was properly applied to a defendant who used a gun to carjack a van and then to force the owner to lie in the back during a trip from Pennsylvania to New Jersey); United States v. Floyd, 81 F.3d 1517, 1527 (10th Cir. 1996) (holding that imposition of consecutive sentences under § 924(c) was appropriate where defendant used a gun to kidnap stepchild and to carjack a getaway vehicle because kidnapping and carjacking involve "different types of conduct" and "require proof of different elements").

We now turn to Allee's claim that the court erred when it refused to reduce his base offense level by three levels for acceptance of responsibility. "When reviewing the grant or denial of a reduction for acceptance of responsibility, we afford great deference to the determination of the district court judge, who is in a unique position to evaluate whether a defendant has accepted responsibility for his offense." U.S. v. Gonzalez-Rodriguez, 239 F.3d 948, 954 (8th Cir. 2001) (quoting United States v. Field, 110 F.3d 592, 594 (8th Cir.1997)). Such a determination should only be reversed if it is clearly erroneous. Id. The burden is on the defendant to establish that he is entitled to the reduction. See U.S. v. Honken, 184 F.3d 961, 968 (8th Cir. 1999) (citations omitted).

U.S.S.G. § 3E1.1 provides that a court should decrease a defendant's offense level by two levels if he "clearly demonstrates acceptance of responsibility for his offense."[3] At the sentencing hearing, the district court refused to grant this reduction because Allee's attempts to escape from custody resulted in an enhancement for obstruction of justice. See U.S.S.G. § 3C1.1 (permitting an increase in offense level by 2 levels for obstruction of the administration of justice). Application Note 4 to § 3E1.1 provides that "[c]onduct resulting in an enhancement under § 3C1.1 . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may be, however, extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." We agree with the district court's conclusion that this is not an extraordinary case.

To determine whether a case is "extraordinary", a court must take into account the totality of the circumstances. Honken, 184 F.3d at 968. There is no magic formula for determining whether a case is extraordinary. Id. Here, Allee argues that his case is extraordinary because he plead guilty despite the lack of a plea agreement, and therefore received the same sentence he would have received had he proceeded to trial. However, this court has stated that "[v]irtually every defendant who receives an acceptance of responsibility adjustment commits no obstruction of justice between the guilty plea and the sentencing hearing, for post-plea obstructive conduct would almost certainly be disqualifying." Id. at 970 (citations omitted). In the present case, Allee escaped from custody six days after he entered his guilty pleas. He then stole a truck and used it in his attempt to avoid recapture. Such conduct precluded the district court from granting Allee a reduction for acceptance of responsibility.

---

[3]U.S.S.G. § 3E1.1(b)(2) states that an additional one-level reduction is available if the defendant's offense level is greater than 16 and the defendant "timely notif[ies] authorities of his intention to enter a plea of guilty."

III. CONCLUSION

For the reasons discussed above, we affirm the sentence imposed by the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.