In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-3954

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTOPHER TRAVIS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CR 973 — **Ruben Castillo**, *Judge.*

ARGUED APRIL 25, 2002 — DECIDED JUNE 19, 2002

Before CUDAHY, RIPPLE, and ROVNER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Christopher Travis pleaded guilty
to two counts of mail fraud, 18 U.S.C. § 1341, and was sen-
tenced to 96 months' imprisonment. His appeal presents
the single question whether the district court properly de-
nied an acceptance-of-responsibility adjustment. The district
court denied the adjustment after finding that Mr. Travis'
comments to probation officials demonstrated that he failed
to accept responsibility for his misconduct. Because the
court's finding is not clearly erroneous, we affirm.

From 1995 to 1998 Mr. Travis used counterfeit checks and
checks drawn on closed accounts to defraud financial in-

stitutions, including Brown & Company (a securities investment corporation), Merrill Lynch, and several banks. Mr. Travis was arrested in December 1998, and the following month a grand jury returned a nine-count indictment charging him with crimes including bank fraud and possession of forged securities. After Mr. Travis pleaded guilty to one count of the indictment, he was sentenced in September 1999 to 36 months' imprisonment. Mr. Travis did not voluntarily report in October to serve his prison term, however, and it was not until April 2000 that federal marshals detained him at a hotel in Los Angeles, California.

From 1998 until his arrest in Los Angeles, Mr. Travis also orchestrated an investment scam by purporting to run an investment company called "Maple Investments," which in fact was not a legitimate business. Mr. Travis solicited a total of more than $200,000 from a dozen or more different "investors" in Maple Investments—much of which he then deposited into his own accounts. Mr. Travis enlisted the investors by promising rates of return between 20% and 50% and by styling himself as a wealthy, accredited stockbroker who held seats on stock exchanges in New York and Chicago. To conceal the fraud, Mr. Travis sent monthly account statements and other correspondence to the investors purporting to show financial transactions made on their behalf. In addition, when the grand jury in Mr. Travis' bank fraud case subpoenaed records from Maple Investments, Mr. Travis provided fraudulent financial statements that failed to show the investments of the two investors who had given him money by that time.

In July 2001 Mr. Travis was charged with ten counts of mail fraud in connection with his operation of Maple Investments as well as an eleventh count for failing to appear to serve the prison term imposed in the bank fraud case. After

entering into a plea agreement, Mr. Travis pleaded guilty to the first two counts of the indictment. At sentencing the district court determined that Mr. Travis had obstructed justice by responding falsely to the grand jury subpoena in the bank fraud case. The court also found that Mr. Travis had failed to accept responsibility for his conduct during the Maple Investments scam because he attempted to minimize that conduct when probation officials interviewed him. The court accordingly adjusted Mr. Travis' offense level upward two levels for obstruction of justice and denied his request for a downward adjustment for acceptance of responsibility.

On appeal Mr. Travis argues only that the district court improperly denied an adjustment for acceptance of responsibility. Section 3E1.1(a) of the sentencing guidelines authorizes a two-level downward adjustment if the defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a) (2000). An additional one-level adjustment is permitted if the defendant "has assisted authorities in the investigation or prosecution of his own misconduct," and the defendant's offense level, prior to the application of § 3E1.1(a), was greater than level 16. *Id.* § 3E1.1(b). The defendant has the burden to establish by a preponderance of the evidence that an acceptance-of-responsibility adjustment is warranted. *United States v. Ewing*, 129 F.3d 430, 435 (7th Cir. 1997). Whether a defendant has accepted responsibility is a factual question reviewed for clear error, *United States v. Mayberry*, 272 F.3d 945, 948 (7th Cir. 2001); we will affirm absent a "definite and firm" conviction that a mistake occurred, *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

A defendant who obstructs justice is presumed not to have accepted responsibility. *See Mayberry*, 272 F.3d at 949;

*United States v. Buckley*, 192 F.3d 708, 711 (7th Cir. 1999); *see also United States v. Allee*, 282 F.3d 997, 1002 (8th Cir. 2002); U.S.S.G. § 3E1.1, cmt. n.4. The government has stressed this presumption both in its brief and at oral argument. However, obstruction-of-justice and acceptance-of-responsibility adjustments are not always mutually exclusive. *See United States v. Champion*, 234 F.3d 106, 110-11 (2d Cir. 2000); *see also United States v. Harper*, 246 F.3d 520, 526-28 (6th Cir. 2001); *United States v. Lallemand*, 989 F.2d 936, 938 (7th Cir. 1993). Here the district court did not cite Mr. Travis' obstructive conduct as the basis for denying an adjustment for acceptance of responsibility. Instead, the district court denied the adjustment because Mr. Travis downplayed the illegality of his operation of Maple Investments during a presentence interview held after he pleaded guilty in connection with the Maple Investments scam. Mr. Travis told probation officials, for example, that he did not intend to defraud the investors in Maple Investments and that the government had "really overblown" his conduct. R. 40, PSR at 5. He also discounted the significance of his actions by suggesting that his problems began only after he received phony checks from his investors. Mr. Travis went on to say that, had he "checked out" the investors, he would not have started writing bad checks. *Id*. Defendants like Mr. Travis, who minimize illegal conduct or blame others for wrongdoing, have failed to accept responsibility. *See United States v. Sierra*, 188 F.3d 798, 804 (7th Cir. 1999); *United States v. Field*, 110 F.3d 592, 594 (8th Cir. 1997); *United States v. Wilder*, 15 F.3d 1292, 1299 (5th Cir. 1994). Thus, the record supports the district court's finding that Mr. Travis failed to accept responsibility, even after he pleaded guilty in this case, and it is unnecessary to consider whether Mr. Travis' obstruction of justice also provided the district court with grounds to deny an adjustment for acceptance of responsibility.

Mr. Travis responds that because he entered his pleas before trial and acceded to the government's estimate of the loss caused by his conduct, he still should have received an acceptance-of-responsibility adjustment. But simply sparing the government the expense of a trial does not automatically entitle a defendant to the adjustment. *See* U.S.S.G. § 3E1.1, cmt. n.3; *see also United States v. Wallace*, 280 F.3d 781, 785-86 (7th Cir. 2002); *United States v. Branch*, 195 F.3d 928, 937 (7th Cir. 1999). The adjustment's purpose is not only to induce guilty pleas; it also takes into account the reduced rate of recidivism among defendants who admit the wrongfulness of their actions. *See United States v. Lopinski*, 240 F.3d 574, 575 (7th Cir. 2001). To accept responsibility a defendant must therefore express more than regret about the consequences of illegal conduct; the defendant must also acknowledge that the conduct violated the law. *See id*. at 576. Yet here Mr. Travis merely apologized at his sentencing hearing to his family and victims "for all the havoc I've caused" and remarked to probation officials that he had made "a wrong turn." R. 42, Sent. Tr. at 24; R. 40, PSR at 5. Because Mr. Travis' other comments to probation officials demonstrated that he did not fully appreciate the illegality of his actions, the district court did not commit clear error in denying Mr. Travis' requested adjustment.

Mr. Travis advances two additional arguments, but neither requires extended discussion. He first submits that the district court gave inadequate reasons for denying the adjustment. It is true that the district court needed to give reasons for the sentence it imposed, *see* 18 U.S.C. § 3553(c), but we shall uphold a sentence imposed with an incomplete statement, provided that a "more than adequate" foundation in the record supports the district court's findings, *see United States v. Corral-Ibarra*, 25 F.3d 430, 442 (7th Cir. 1994). In Mr. Travis' case the record contains not only an ade-

quate factual foundation for denying the adjustment, but it also includes comments from the court explaining why the adjustment was denied. As Judge Castillo explained, Mr. Travis was not entitled to an adjustment because he told probation officials that he never intended to defraud the investors and that he began "floating checks" only because some of the investors provided him with fraudulent checks. R. 40, PSR at 6. Given this explanation, which is sufficient, Mr. Travis has no basis to challenge the district court's articulation of its reasons. Second, Mr. Travis maintains that in addition to a two-level adjustment under U.S.S.G. § 3E1.1(a), he should also have received another one-level decrease under § 3E1.1(b)(2) since he timely notified authorities of his intention to plead guilty. But § 3E1.1(b) by its own terms applies only to defendants who qualify for a decrease under § 3E1.1(a), and here the record supports the district court's finding that Mr. Travis was not entitled to a two-level decrease in the first place.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*