**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Roger W. SEXTON, Defendant–
Appellant.**

No. 02–3449.

United States Court of Appeals,
Seventh Circuit.

Argued June 10, 2003.

Decided July 17, 2003.

Before KANNE, DIANE P. WOOD,
and WILLIAMS, Circuit Judges.

### ORDER

Roger Sexton pleaded guilty to conspiracy to transport stolen goods, 18 U.S.C. § 371, and interstate transportation of stolen goods, 18 U.S.C. §§ 2, 2314. During sentencing, the district court imposed an upward adjustment for obstruction of justice, refused any reduction for acceptance of responsibility, and then sentenced Sexton to consecutive terms of 120 months' imprisonment on the interstate transportation charge and 5 months' imprisonment on the conspiracy charge. On appeal Sexton challenges only the district court's denial of a reduction for acceptance of responsibility. We affirm.

Sexton and his co-conspirators Michael Veysada and Paula Allen engaged in a criminal conspiracy in Wisconsin and Illinois in early 2002. On several different

occasions, Sexton and Veysada burgled Wisconsin factories and warehouses while Allen served as a "lookout" during the burglaries, watching for police. Throughout the conspiracy, Sexton took, among other things, plumbing fixtures, business equipment (such as floor scales), more than 20,000 pounds of metal, and automotive parts. Sexton stored the stolen goods in a Chicago warehouse while he arranged to sell them. After agreeing to purchase scrap metal from Sexton, one Chicago-based metal dealer suspected that the metal Sexton delivered was stolen and contacted the police. The police confirmed that the metal had been stolen from a Wisconsin business, and subsequently arrested Sexton when he attempted to receive payment for the metal at the dealer's place of business.

After Sexton was originally charged with conspiracy and transportation of stolen goods, a grand jury returned a superceding indictment that added the additional charge of witness tampering, 18 U.S.C. § 1512(b)(2)(A). The witness-tampering charge resulted from Sexton's attempts after he was arrested to have family members and fellow cohorts hide co-conspirator Veysada from police. According to the government, Sexton did not yet want Veysada to turn himself in because he wanted to use Veysada's whereabouts as a "bargaining chip" during plea negotiations.

On the Friday before a Monday trial date, the court held a pretrial conference during which the court expressed its belief that Sexton was attempting to delay trial. Sexton, who after previously convincing the court to discharge his counsel, proceeded *pro se* during the conference and repeatedly stated that he did not understand the proceedings or what was expected of him at trial, and requested a continuance of "five or six years." The court apparently viewed this request as a delay tactic, commenting, "I understand. That's exactly what your whole plan has been. I understand that very well based on that remark."

After a break in the pretrial conference, Sexton pleaded guilty (without a written agreement) to conspiracy and transporting stolen goods in exchange for the dismissal of the witness tampering charge. The parties also agreed that the government would take no position during the plea hearing regarding a reduction for Sexton's acceptance of responsibility but that it could move the court at a later date to reduce his sentence if he provided substantial assistance. The court accepted Sexton's plea.

At sentencing, both the government and Sexton argued that the court should decrease Sexton's offense level for his acceptance of responsibility. The government stated that "[n]obody was inconvenienced" by Sexton's pleading guilty the Friday before a Monday trial and that it "didn't spend any more money in gearing up for trial and incurring unnecessary expense." Sexton argued that a reduction was warranted because he says he admitted—during a debriefing session with the FBI two weeks after he pleaded guilty—that he and his co-conspirators committed two burglaries which the FBI did not know about. Nothing in the record, however, reflects either the nature or the implications of this supposed admission.

The district court denied Sexton a reduction for acceptance of responsibility because his case was not "extraordinary" within the meaning of U.S.S.G. § 3E1.1, Application Note 4. In a "Statement of Reasons" attached to its judgment, the court reiterated its belief first expressed during sentencing that "[t]here is nothing to suggest that his efforts to enter into a plea agreement were premised on his ac-

ceptance of responsibility." The court went on to state that Sexton pleaded guilty in order "to obtain that very best deal which may have been available to him at the time." The court also found that Sexton's witness tampering significantly undermined any acceptance of responsibility, stating that "it [is] almost surreal to provide obstruction of justice immediately after the arrest, and then acceptance of responsibility three minutes before the plea of guilty is entered—[it] just doesn't wash." The court, however, did note that any benefits arising from Sexton's post-plea admissions "could best be addressed in a Rule 35(b) hearing at a later date." Finally, the court stated that even though the government claimed that it was not inconvenienced by Sexton's late guilty plea, "the government ... was indeed placed to a disadvantage. You can't calendar your cases efficiently. There is the time and effort that even this government agency has to spend sometime [sic] in readying itself for trial."

On appeal Sexton challenges only the district court's refusal to grant him a reduction for acceptance of responsibility. We will review the denial of such an adjustment for clear error, *United States v. Fudge,* 325 F.3d 910, 923 (7th Cir.2003), and will uphold the district court's decision if it is supported by an adequate foundation in the record, *United States v. Travis,* 294 F.3d 837, 841 (7th Cir.2002). A criminal defendant is entitled to a reduction if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a); *Fudge,* 325 F.3d at 923. But when a defendant obstructs justice, the U.S. Sentencing Guidelines presumes that the defendant has not accepted responsibility. U.S.S.G § 3E1.1, Application Note 4; *Fudge,* 325 F.3d at 923. To overcome this presumption, the defendant must prove that his case is "extraordinary."

U.S.S.G. § 3E1.1, Application Note 4; *Fudge,* 325 F.3d at 923.

Sexton argues that the district court erred by "summarily concluding that [he] should never receive 'acceptance of responsibility' for his isolated conduct shortly after his arrest" and by not making "an inquiry into the nature and impact of [his] obstructive conduct." Had the district court so inquired, Sexton continues, it would have found that his "considerable gesture" of confessing to two crimes two weeks after pleading guilty "surely outweighed ... his isolated obstructive conduct immediately after his arrest."

The district court did not clearly err when it denied Sexton a reduction for acceptance of responsibility because Sexton failed to demonstrate that his acceptance of responsibility was extraordinary. When deciding whether to award this reduction, a district court may consider whether a defendant provided the government with information leading to arrests or prosecutions in other cases. *United States v. Monem,* 104 F.3d 905, 911 (7th Cir.1997). Even though Sexton claims without elaboration that his post-plea admissions "solve[d] two interstate burglaries at the snap of a finger," he provided no evidence to the district court that the admissions led to the arrest or prosecution of his co-conspirators. The court did not explicitly cite this lack of evidence when it denied Sexton the reduction, but it did allude to Sexton's lack of assistance when it noted that the government could bring a Federal Rule of Criminal Procedure 35(b) motion at a later date if Sexton's post-plea admissions turned out to assist the government. Thus, the district court did not err when it implicitly acknowledged that Sexton's admission was not "extraordinary."

Sexton also argues that his pleading guilty only three days before trial does not preclude him from receiving a reduction

for acceptance of responsibility. He argues that his plea was sufficiently timely within the meaning of U.S.S.G. § 3E1.1, Application Note 1(h), because the government itself concedes that it was not inconvenienced by the timing of his plea.

Sexton's reasoning is flawed because the district court's acceptance-of-responsibility analysis rested on the additional ground that Sexton pleaded guilty to get the "very best deal" he could, not because he accepted responsibility for his criminal behavior. We have stated that a defendant is not automatically entitled to an acceptance-of-responsibility adjustment for pleading guilty and avoiding the cost of trial; the defendant must also express more than regret and admit that his conduct was criminal. *Travis*, 294 F.3d at 840; *see also United States v. Galbraith*, 200 F.3d 1006, 1016 (7th Cir.2000) ("[L]ast minute guilty pleas do not demonstrate the requisite acceptance."); *United States v. Ewing*, 129 F.3d 430, 436 (7th Cir.1997) (affirming denial of acceptance-of-responsibility adjustment where defendant "pled guilty on the last business day before the trial's scheduled start"). Here, even if Sexton's guilty plea spared the government the expense of trial, he pleaded guilty in the court's eyes to get a good deal, not out of remorse. The court, therefore, did not err in denying Sexton a reduction for acceptance of responsibility.

AFFIRMED.