**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Brian SEIFERT, Defendant–Appellant.**

No. 03–1843.

United States Court of Appeals,
Seventh Circuit.

Submitted March 4, 2004.

Decided March 5, 2004.

Sharon Jackson, Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

Brian Seifert, Federal Correctional Institution, Manchester, KY, pro se.

Before EASTERBROOK, MANION, and EVANS, Circuit Judges.

## ORDER

Brian Seifert pleaded guilty to making a false statement to the FBI in violation of 18 U.S.C. § 1001. The district court sentenced Seifert to twenty-two months' imprisonment, three years' supervised release, a $2,000 fine, and a $100 special assessment. Seifert filed a timely notice of appeal, but his appointed counsel seeks to withdraw under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), because she deems the appeal frivolous. We notified Seifert of counsel's motion, *see* Cir. R. 51(b), but he has not responded. We therefore confine our review to the potential issues counsel identifies in her facially adequate brief. *See United States v. Tabb*, 125 F.3d 583, 584 (7th Cir.1997) (per curiam); *United States v. Wagner*, 103 F.3d 551, 553 (7th Cir. 1996).

Shortly after the events of September 11, 2001, Seifert contacted the FBI and informed agents that an unknown male of Middle Eastern descent had entered his computer data recovery business and engaged him to recover data from a disk. Seifert claimed that, upon examining the disk, he had found a file that generated an image of an American flag which, when decrypted, revealed Arabic text urging terrorists to drive fuel trucks into schools, churches, synagogues and shopping malls. Seifert gave a copy of the recovered file to the FBI. However, after analyzing the file and investigating Seifert's statement, the FBI quickly began to doubt Seifert's story and the existence of the Middle Eastern man. When pressed, Seifert changed his story and claimed that a Caucasian man he

met at a restaurant had given him the disk. The FBI also doubted this version of events. In fact, after its initial investigation, the FBI had concluded that Seifert was the true author of the text. Accordingly, the government charged Seifert with two counts of making false statements to a federal agency. *See* 18 U.S.C. § 1001.

In October 2002 Seifert pleaded guilty to Count One of a superseding indictment, which charged him with fabricating the story about the Middle Eastern man. In the plea agreement the parties stipulated that the applicable offense guideline for Count One was § 2J1.2 of the sentencing guidelines, which covers "Obstruction of Justice." The parties disputed only two sentencing issues: (1) whether Seifert's offense resulted in "substantial interference with the administration of justice," warranting a three-level upward adjustment under § 2J1.2(b)(1), and (2) whether Seifert should receive an adjustment for acceptance of responsibility. On the issue of the adjustment for "substantial interference," the government argued that Seifert's false statement to the FBI led to an agency investigation that consumed valuable agency resources at a time when resources were already strained by the events of September 11. The government also disputed Seifert's acceptance of responsibility because, according to the government, even after Seifert had admitted fabricating the Middle Eastern man he had continued to lie about the true source of the file.

At sentencing Seifert responded to the government's arguments by introducing documents and expert testimony to support his claim that he did not create the file. After hearing this evidence, the district court noted for the record that it would make no finding on the issue of whether Seifert had created the file; instead the court would sentence Seifert

solely on the basis of his initial false statement. The court proceeded to apply the three-level upward adjustment under § 2J1.2(b)(1), finding that Seifert had told a "universe of lies" about the source of the file, and that federal agencies had spent "a great deal" of time and resources determining the authenticity of the threat. The court also denied any adjustment for acceptance of responsibility because it disbelieved Seifert's story that he told the false statement about the Middle Eastern man because he was afraid of retribution from the unknown Caucasian man if he told the truth. Seifert then informed the court that he had no other objections to the presentence report.

■ Counsel first considers whether Seifert might argue that the court incorrectly applied the three-level adjustment under § 2J1.2(b)(2) for "substantial interference with the administration of justice," a decision that we would review for clear error. *See United States v. Alwan*, 279 F.3d 431, 440 (7th Cir.2002). As defined by the guidelines, substantial interference includes the "unnecessary expenditure of substantial governmental ... resources." U.S.S.G. § 2J1.2, cmt. n. 1 (2002). Seifert's lie about the Middle Eastern man led to an investigation by the FBI into the nature and extent of the purported threat. The FBI sent agents to interview Seifert and other possible witnesses and to surveil Seifert's business in case the Middle Eastern man returned. FBI agents and private companies contracted by the agency also spent a significant amount of time examining the computer data provided by Seifert as well as fingerprinting items that Seifert claimed the man touched. Although we have never tried to define exactly how much time and money must be wasted before an expenditure of resources has become substantial, the resources consumed by the Seifert investigation are sim-ilar in scope to those spent in other investigations that have been held to satisfy the language of the adjustment. *See United States v. O'Neill*, 116 F.3d 245, 250 (7th Cir.1997) (false statements to grand jury that caused authorities to spend additional resources to confirm witness's story constitutes substantial expenditure); *United States v. Tackett*, 193 F.3d 880, 888 (6th Cir.1999) (fraud investigation that lasted several days constitutes substantial expenditure). In fact, the impact of the Seifert investigation on the FBI's resources was particularly significant, as the agency was already strained by the events of September 11. Thus we would not be able to say that the court's decision was clear error, and an appeal on this issue would be frivolous.

■ The potential second issue considered by counsel is whether Seifert could challenge the district court's refusal to decrease his offense level for acceptance of responsibility. However, instead of attempting to satisfy his burden of proving his acceptance of responsibility for making the false statement about the Middle Eastern man, *see United States v. Travis*, 294 F.3d 837, 840 (7th Cir.2002), Seifert spent the entire sentencing hearing producing a large amount of evidence relating to a collateral issue—whether he was the one who created the file. At sentencing the court explicitly stated that it would not make a finding on whether Seifert created the file. Instead, the court chose to deny the adjustment because Seifert continued to blame the false statement on his fear of the unknown Caucasian man—a story that the court believed to be a fabrication. *See Travis*, 294 F.3d at 840 (defendants who "minimize illegal conduct or blame others for wrongdoing" have "failed to accept responsibility"); *see also United States v. Utecht*, 238 F.3d 882, 888 (7th Cir.2001) (district court is given "great deference" in

assessing honesty of defendant for acceptance of responsibility purposes).  Thus, the court found that even if Seifert did not create the file he had still failed to accept responsibility for his initial false statement.  Because Seifert failed to prove his eligibility for the adjustment at sentencing, any appeal on this issue would be frivolous.

Finally counsel considers whether Seifert could raise the ineffective assistance of his trial counsel on appeal but correctly notes that such a claim is best explored through a collateral proceeding in district court.  *See Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *United States v. Schuh*, 289 F.3d 968, 976 (7th Cir.2002).

For these reasons, we GRANT counsel's motion to withdraw, and DISMISS the appeal.